J. and H. Smith *vs.* The Empire Insurance Company.

The plaintiffs requested V. C., who was the agent of the defendants for that purpose, to receive an application for insurance and forward the same to the defendants. V. C. filled in the heading of the application, and inserted the items of the property which the plaintiffs desired to insure, and the plaintiffs signed their names to the application. V. C. then left, with the understanding that he should fill out the rest of the application when he got where he could write; there being no conveniences for writing, on the spot. Nothing was said between the plaintiffs and V. C. about incumbrances on the property to be insured; but after the latter had left, with the application, he inserted in it the statement "there is no incumbrance except the P. mortgage." This statement was in fact untrue. *Held* that V. C. was constituted the *agent* of the plaintiffs to complete the application, and that they were bound by the false statement inserted by him, in the application, in regard to incumbrances.

*Held also*, that the plaintiffs must suffer for this act of V. C., on the principle that where one of two innocent parties must suffer from the improper act of a third, it shall be the one who has enabled such third person to do the act.

Where the application for insurance is referred to in the policy, for a more particular description of the property insured, and as forming a part of the policy, the representations in the application amount to an express warranty.

And if, in such a case, the application contains a statement that there are no incumbrances on the property, except a mortgage which is specified, that statement is an express warranty against other incumbrances, which warranty is broken if there are in fact other incumbrances; and such breach will render the policy void.

So also, if the conditions annexed to a policy are declared to form a part thereof and one of those conditions requires the applicant to state, among other things, the nature and amount of the incumbrances, and declares that any misstatement or concealment on that subject shall render the insurance void, a false statement in regard to the amount of incumbrances upon the property will vitiate the policy.

Where an insurance is upon furniture, as well as buildings, and the policy is held to be void as to the buildings, by reason of a false warranty as to the incumbrances thereon, it will be deemed void as to the furniture also, although there be no incumbrance on such furniture.

THIS action was brought on a policy of insurance, bearing date the 5th day of September, 1854, issued by the defendants to the plaintiffs, and insuring them against loss by fire, for one year, in the sum of $3000, as follows: $1600 on their dwelling house; $800 on their furniture therein; $200 on their barn and shed; $200 on their grain therein, and $200 on their hay therein.

The dwelling house and furniture were burned in the night of the 16th of July, 1855. The plaintiffs' application for the policy, when received by the defendants, was in these words and figures, viz: "Application of James and Harrison Smith of the town of Hector, Schuyler county, New York, for insurance against fire, by the Empire Insurance Company, for the sum of three thousand dollars, for the term of one year, commencing on the 5th day of Sept. 1854; on their dwelling house, $1600; household furniture therein, $800; barn and shed adjoining, $200; hay therein, $200; grain, $200; cash premium, $9. All situated in Hector, county of Schuyler, state of New York. The stove pipes are all secured from wood work or other combustible materials by stone, earthen or metalic tubes or plates, or by mason work; ashes are disposed of securely. We own the property; *there is no incumbrance except the Petrie mortgage.* Dated Sept. 5, 1854." Daniel Van Camp took the application for the policy and sent it to the defendants at Union Springs, Cayuga county, New York. He was the defendants' agent "to receive applications and forward them to the defendants." One of the plaintiffs requested him to take the application and forward it to the defendants. He was then about half a mile from the plaintiffs' house. Van Camp there filled in the heading of the application and inserted the items of property which the plaintiffs desired to insure. No conveniences were there for writing, and Van Camp then left the plaintiff, with whom he was doing the business, saying he *would fill out the rest of the application when he got where he could write.* The plaintiff with whom Van Camp did the business, signed the plaintiffs' names to the application before Van Camp left with it. Nothing was said between the plaintiffs and Van Camp about incumbrances on the property to be insured; but after the latter had gone off with the application he inserted in it the statement, "there is no incumbrance except the Petrie mortgage." His excuse for making this insertion, without consulting the plaintiffs about it, was that he had insured them three years prior to that time, when he was told of a mortgage to Petrie of $4000, on the

property. It did not appear that the plaintiffs knew that there was any statement, in their application, as to incumbrances, before the fire. The application did not call for any information from the plaintiffs in relation to incumbrances upon the property; and it was not shown that it was a printed form furnished by the defendants.

The policy contained these statements, to wit: "The Empire Insurance Company, by this policy of insurance, in consideration of nine dollars, do insure James and Harrison Smith against loss or damage by fire, to the amount of three thousand dollars; on their dwelling house, $1600; household furniture therein, $800; barn and shed adjoining, $200; hay therein, $200; grain, $200, *as described in application,* 6786, *as forming a part of this policy.*" * * " And it is also agreed that this policy is made and accepted subject to and in reference to the terms and conditions hereto annexed, *as forming a part of this policy.*" One of the conditions annexed to the policy contained this statement, viz: " Application for insurance to be made according to the printed forms of the company shall specify the purposes for which the premises are occupied, the various kinds of personal property to be covered by the policy, the nature of the applicant's title, if less than fee simple, *the nature and amount of incumbrances, if any.*" * * " And any misstatement or concealment relative to any of the foregoing requirements, or the withholding any information affecting the hazard, shall render the insurance void, the validity of the policy being based thereon." Two other conditions, annexed to the policy, were as follows, to wit: " 2d. The survey of the premises insured shall state the materials, and give a general description of the buildings to be insured, their location as to other buildings, naming all exposures within eight rods, and also state whether this company has any other risks within said distance, *for the correctness of which, the company is responsible if made by a duly authorized agent.*"

" 22d. *There shall be no waiver or evasion of any of the printed terms and conditions of the policy,* and any erasure, interlineation or indorsement for that purpose, by any person,

shall be deemed an attempt at fraud on the company, and shall render the policy void."

J. W. Petrie and wife gave a mortgage to the Utica Savings Bank, dated the 5th day of May, 1847, to secure the payment of $4000. This mortgage was duly recorded; and it covered 450 acres of land, including the premises on which the insured property was situated. There was an uncanceled judgment against James Smith for $92.82, docketed prior to the date of the policy in question, but it was paid before that date. Petrie and wife conveyed 213 acres of the above mentioned land to Elihu Ring, by a deed dated the 19th day of August, 1850, subject to the payment of $3000 of the mortgage to the savings bank. Ring and wife, by a deed bearing date the 31st day of March, 1851, conveyed the above mentioned 213 acres of land to the plaintiffs. The property insured was situated on the 213 acres. Maria Petrie, by a deed dated the 1st day of October, 1853, conveyed to Elihu Ring the residue of the before mentioned 450 acres of land covered by the mortgage to the savings bank. On the 1st day of July, 1851, Ring paid to the savings bank the $3000, which he agreed to pay when he took the deed of Petrie and wife, for the above mentioned 213 acres of land owned by the plaintiffs. The residue of the aforesaid 450 acres of land was worth $2300, when the policy in question was issued to the plaintiffs. The plaintiffs gave a mortgage to Ring on the 213 acres of land, dated April 1st, 1851, to secure the payment of $4000, in two, four, six and eight years, with interest annually; which mortgage had been assigned to Daniel Bates, and was outstanding and unpaid when the policy in question was issued.

The action was tried at the Tompkins circuit, in January, 1857, when the foregoing facts were proved, and the value of the property burned was shown. The plaintiffs' counsel requested the judge who presided on the trial to hold, as matter of law, that for the purposes of this suit, the mortgage executed by Petrie and wife to the savings bank, on the 450 acres of land before mentioned, was not a lien or incumbrance upon the 213 acres of the same land that was conveyed by Petrie to Ring, and by

the latter to the plaintiffs, and on which the insured property was situated. But the judge refused so to hold, and the plaintiffs' counsel excepted. The plaintiffs' counsel requested the judge to hold, as matter of law, that as there was no direction on the part of the plaintiffs, or authority given by them, to (Van Camp) the agent of the defendants, to insert in the application any thing about incumbrances, or authority to insert what was stated therein by said agent, the plaintiffs were not bound by, or to be held responsible for, such statement. The judge refused so to hold, and the plaintiffs' counsel excepted. The plaintiffs' counsel requested the judge to hold that Van Camp, in making the statement in the application in regard to incumbrances, without the knowledge, direction or consent of the plaintiffs, did not act as the agent of the plaintiffs. The judge refused so to hold, and the plaintiffs' counsel excepted. The judge held and decided that the plaintiffs were bound by, and were to be held responsible for, the acts of Van Camp, in taking the application for the policy, and the statement made by him therein. And that in making the statement in the application in regard to incumbrances, Van Camp acted as the agent of the plaintiffs. To which ruling and decision the plaintiffs' counsel excepted. The plaintiffs' counsel requested the judge to hold and decide that as the mortgage, given by the plaintiffs to Elihu Ring, was the only lien or incumbrance upon the property destroyed, available in this action, a mere misnomer in the application, calling it the Petrie mortgage instead of the Ring mortgage, could not invalidate the policy. The judge refused so to decide, and the plaintiffs' counsel excepted. The plaintiffs' counsel requested the judge to hold that notwithstanding the incumbrances upon the real estate, as the personal property was unincumbered, the plaintiffs were entitled to recover the value of the personal property, covered by the policy and destroyed by the fire. But the judge refused so to hold, and the plaintiffs' counsel excepted.

The judge held and decided, that in consequence of the incumbrances upon the real property, the plaintiffs were not entitled to recover either for the real or personal property

---

Smith *v.* Empire Insurance Company.

---

destroyed, or any part thereof. To which ruling and decision the plaintiffs' counsel excepted. The judge thereupon nonsuited the plaintiffs. To which ruling the plaintiffs' counsel excepted. The plaintiffs' counsel made a bill of exceptions, which the judge directed to be heard in the first instance at the general term, and stayed the entry of judgment in the mean time. The cause was argued at the general term, on the plaintiffs' motion for a new trial.

*J. McGuire,* for the plaintiffs.

*Dana, Beers & Howard,* for the defendants.

*By the Court,* BALCOM, J. It was understood between Van Camp and the plaintiff from whom he received the application for the policy in question, that it was not completed when he took it, and that he was to " fill out the rest of it when he got where he could write." This understanding constituted Van Camp the plaintiffs' agent to complete the application; and although nothing passed between him and the plaintiff with whom he did the business, in regard to incumbrances on the property to be insured, the plaintiffs are responsible for all that he afterwards inserted in the application to make it complete, including the words, " there is no incumbrance except the Petrie mortgage." Van Camp must have understood, from what was said when he took the application for the policy, that he was to insert in it whatever he should deem proper to make it perfect, " when he got where he could write," or he would not have inserted the sentence in it as to incumbrances. The plaintiffs must suffer for this act of Van Camp, on the principle that where one of two innocent parties must suffer from the improper act of a third, the one shall suffer who has enabled such third person to do the act. (6 *Wend.* 620. 13 *id.* 572. 23 *id.* 268. 1 *Hill,* 307. 2 *id.* 465. 7 *Paige,* 69.) The plaintiffs, by permitting Van Camp to complete the application in their absence, enabled him to insert the false statement in it, that there was no incumbrance on the prop-

erty to be insured, except the Petrie mortgage; and they must suffer the consequences of that act.

The application was made a part of the policy, by an express reference therein to it, *as forming a part of it.* The conditions annexed to the policy also formed a part of it by an equally express reference therein to them. One of the conditions required the plaintiffs to state, in their application, "the nature and amount of incumbrances, if any," on the property to be insured; and it declared that "any misstatement or concealment relative" to the same should "render the insurance void, the validity of the policy being based thereon." Another condition was, that there should be no waiver or evasion of any of the printed terms and conditions of the policy. When the policy was issued there were two mortgages on the real estate upon which the property insured was situated : one that was executed by J. W. Petrie to the Utica Savings Bank, on which $1000 remained unpaid; and one that the plaintiffs gave to Elihu Ring, on which $4000 remained unpaid. As there was such an incumbrance on the premises as the one mentioned in the application for the policy, the application must be construed to refer to that, although it was only a nominal lien on the premises, and though it might perhaps be regarded as no lien at all, if it had not been mentioned. The statement in the application, that there was "no incumbrance except the Petrie mortgage," was an express warranty by the plaintiffs against other incumbrances, and the warranty was broken by reason of the existence of the mortgage upon the premises which the plaintiffs gave to Ring; and such breach of the warranty rendered the policy void. It has been held that the stipulations in the application amount to an express warranty where the application is referred to in the policy for a more particular description of the property insured, and *as forming a part of the policy. (Egan* v. *The Mu. Ins. Co. of the City and Co. of Albany,* 5 *Denio,* 326. *Murdock* v. *Chenango Co. Mu. Ins. Co.,* 2 *Comst.* 210. *Wilson* v. *Herkimer Co. Mu. Ins. Co.,* 2 *Selden,* 53. *Jennings* v. *Chenango Co. Mu. Ins. Co.,* 2 *Denio,* 75. 3 *Hill,* 501. *Duncan* v. *Sun Fire Ins.*

Smith *v.* Empire Insurance Company.

Co., 6 *Wend.* 488. *Sexton* v. *Montgomery Ins. Co.,* 9 *Barb.* 191. *Kennedy* v. *St. Lawrence Co. Mu. Ins. Co.,* 10 *id.* 285. *Westfall* v. *Hudson River F. Ins. Co.,* 2 *Kern.* 289. *Mead* v. *N. Western Ins. Co.,* 3 *Selden,* 530. *Wall* v. *East River Mu. Ins. Co., Id.* 370. *Burritt* v. *Saratoga Mu. F. Ins. Co.,* 5 *Hill,* 188. 2 *Comst.* 43. *Trench* v. *Chenango Co. Mu. Ins. Co.,* 7 *Hill,* 122.) The case of the *Farmers' Ins. and Loan Co.* v. *Snyder,* (16 *Wend.* 481,) does not show that the statement in the plaintiffs' application, as to incumbrances, was a mere representation, and if it did the authorities above cited show that it could not be followed.

Another question is presented by the bill of exceptions, and that is, although the policy was void as to the insurance on the house, was it good as to the insurance on the furniture that was in the house? There was no incumbrance on the furniture. If the case of *Trench* v. *The Chenango Co. Mu. Ins. Co.,* (7 *Hill,* 122,) is good law, the plaintiffs were entitled to recover for the furniture that was burned in the house. But that case has been shaken too much by the court of appeals, in *Wilson* v. *The Herkimer Co. Mu. Ins. Co.,* (2 *Selden,* 53,) to be followed; and the case of *Brown* v. *The People's Mu. Ins. Co.,* (11 *Cushing,* 280,) is in conflict with it. The weight of authority is that the policy in question was invalid as to the personal as well as the real estate, and we must hold that the entire policy was void.

The plaintiffs' motion for a new trial must be denied, with costs.

Decision accordingly.

[Tompkins General Term, October 20, 1857. *Gray, Mason* and *Balcom,* Justices.]