Ritt v. Washington Marine and Fire Insurance Co.

[ALBANY GENERAL TERM, December 7, 1863. *Hogeboom, Peckham* and *Miller*, Justices.]

RITT and others *vs.* THE WASHINGTON MARINE AND FIRE INSURANCE COMPANY.

Where an agent of an insurance company, authorized to effect insurances on vessels, &c., and to procure policies from the company and deliver them to the insured, receives and accepts an application, and negotiates an insurance, as agent, on property of which he is one of the owners, and communicates the transaction to his principal, without disclosing his interest in the property, and on receiving a policy from the company, delivers the same to the insured, such policy is void.

It is the duty of an agent of an insurance company to acquire the proper information, and make the necessary examination, to lead to an intelligent decision upon the acceptance or rejection of the risk offered. The company has a right to the exercise of the agent's disinterested skill, diligence and zeal, for its own exclusive benefit.

And while acting as agent, he cannot at the same time take upon himself incompatible duties and characters; or become agent in a transaction, where he has an adverse interest or employment.

An insurance, produced in that manner, is not avoided on account of the materiality of the relation of the agent to the risk, but because it is against public policy to allow such agreements to stand.

Even if it could be shown that the relation was not material to the risk, the insurance would be void.

APPEAL from a judgment rendered on a verdict. The facts appear in the opinion of the court.

*Geo. B. Hibbard*, for the appellant.

*John Ganson*, for the respondents.

*By the Court*, DANIELS, J.  In March, 1861, Gardner, Ritt & Fox, of the city of Buffalo, were authorized by the defendant, an insurance corporation in the city of New York, to effect risks binding upon it on vessels, steamboats, propellers and their cargoes, which were to be communicated to the company by the next mail, and the policy immediately forwarded, unless it elected to decline the risk; for which services they were to receive ten per cent upon the amount of the premiums.  The plaintiff, Michael Leo Ritt, was one of the members of this firm, and continued to be so to and including the time of the issuing of the policy in suit.  On the 15th of October, 1861, the plaintiffs became the owners of the steamboat Key Stone State, and on the 30th day of that month, and after she had undergone certain repairs at the port of Buffalo, an application was made for the defendant to insure her.  It was directed to Gardner, Ritt & Fox, agents, and made in the name of Francis Handel, on behalf of himself and others, owners.  In making it, a blank form was used, which was mostly filled up by the plaintiff, M. L. Ritt.  But it nowhere appeared in it that he was in any manner interested in the steamboat.  It stated that a note would be given for the premium *"by all the owners,* and that the application was considered binding until rejected and notice given the applicant, or approved and the contract of insurance perfected by the issue of the company's policy, by Gardner, Ritt & Fox, agents."  Upon this application the policy on which the suit is brought was executed and sent by mail to these agents for delivery, and after its delivery by them they mailed the premium note to the defendant.  That was made by the plaintiffs, Francis Handel and Gregory Ritt, payable to the order of and indorsed by the plaintiff, M. L. Ritt.  In the latter part of November, 1861, the steamboat

was lost in a storm upon Lake Huron, which was one of the perils covered by the policy. Evidence was given on the trial showing that another insurance was procured upon her on the 6th of November, 1861, by M. L. Ritt, at Cleveland. The application for that insurance was subscribed in his own name, and the note given was jointly made by all the plaintiffs. The defendant was first informed after the loss that M. L. Ritt, one of its agents, was interested in the subject of the insurance. Evidence was also given tending to show that the steamboat was unseaworthy at the time the policy in suit was issued, and at the time of her loss. But on that as well as the other questions of fact the jury found for the plaintiffs.

Upon the trial the court seems to have distinguished between the validity of the application and the policy, holding that the former was not legally binding on the defendant, while the latter was. In that view of the law the jury were instructed that the relation of M. L. Ritt to the defendant rendered the application voidable, but as the defendant had issued the policy upon it, the relation referred to did not affect that, unless the concealment of his interest by the agent was material to the risk, and if material to the risk, then the policy would be void. The defendant excepted to these propositions, insisting that the policy was voidable on account of the relation which M. L. Ritt sustained to it. The court erred in withholding from the jury the instruction requested, and also in that actually given to them.

From the form and tenor of the application, the applicants for insurance, and the agents of the defendant, would be supposed to be persons entirely different and distinct from each other. It proceeds from Handel and others, owners, and is directed to Gardner, Ritt & Fox, agents, and accepted by them in that capacity, by the subscription of their firm name. M. L. Ritt was acting here in three different capacities. For himself as one of the owners, for the other owners as their agent, and for the defendant as one of its agents. But his duty to

the defendant was not terminated with the application, for by the terms of the appointment under which he acted as agent, as well as the express stipulation of the application, the agents were to procure the policy from the company and issue it to the insured. The final act required to give validity to the insurance was to be, and was in fact, their act as agents. The making of the policy by the company depended upon whether it accepted or rejected the application taken by the agents; and when accepted, as it was in this case, the company incorporated into the policy the terms of the application. It was not a different agreement, but the formal adoption of the one already temporarily made by the agents. The duties of the agents, to the company, were the same as they would be where they have authority to receive the application and at once issue the policy upon it. In either case the agent should acquire the proper information, and make the necessary examination, to lead to an intelligent decision upon the acceptance or rejection of the risk offered; and in each class of cases the company must place the same reliance upon its agent for the discharge of those duties. When a risk has been accepted the company has a right to suppose the duty to have been carefully and impartially performed, and in that belief to issue the policy. For such is the obligation the agent incurs to his principal. In the discharge of his duty the principal has a right to the "exercise of his disinterested skill, diligence and zeal, *for his own exclusive benefit.*" (*Story on Agency,* § 210.) And while acting as agent he cannot take upon himself at the same time incompatible duties and characters, or become agent in a transaction, where he has an adverse interest or employment. (*Id.* § 9.) "The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self interest and integrity. The disability to purchase is a consequence of that relation between them, which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which

duty, his own personal 'interest may withdraw him. In this conflict of interest the law wisely interposes. It acts not on the possibility that in some cases the sense of that duty may prevail over the motives of self interest, but it provides against the probability in many cases and the danger in all cases, that the dictates of self interest will exercise a predominant influence and supersede that of duty." (*Per Wayne, J. in Michaud v. Girod, 16 Curtis,* 191.) That he was jointly an agent with two others did not relieve him from this obligation, for it rested indivisibly upon each alike. (*Story on Agency,* § 42.)

An insurance produced in this manner is not avoided on account of the materiality of the relation of the agent to the risk, but because it is against public policy to allow such agreements to stand. Even if it could be shown that the relation was not material to the risk, the insurance would still be void.

The law will not allow the agent to place himself in such an attitude towards his principal as to have his interest conflict with his duty. The propriety of applying the rule in this case is illustrated by the controversy upon the trial as to the seaworthiness of the steamboat.

In the case of *The Utica Ins. Co.* v. *The Toledo Ins. Co.,* (17 *Barb.* 132,) both companies had the same agent, who reinsured in one company a risk taken by him in the other. The policy was declared voidable, and Allen, justice, in the course of his opinion, says, "It is quite clear, upon authority as well as upon principle, that Clark, as agent for the defendant, could not have made a valid contract of insurance with himself upon his own property." (*Id.* 134.) In *The N. Y. Central Ins. Co.* v. *The Protection Ins Co.,* (20 *Barb.* 468,) the same principle was declared; and when the same case was before the court of appeals, Denio, Ch. J. remarked: "No one will contend that he, as the defendant's agent, could have made a contract to insure himself."

The defendant also requested the court to instruct the jury

that if the existence of the interest of the agent, M. L. Ritt, was purposely withheld from the knowledge of the defendant, this vitiated the policy, whether material to the risk or not. The court refused so to charge, unless the jury were satisfied that it was material to the risk, and the defendant excepted both to the refusal and the charge. The terms "purposely withheld" are equivalent to intentionally or designedly withheld, which would be a fraudulent concealment; a concealment of a fact material to the question whether the insurer will insure at all, although not material to the risk, would avoid the policy. (*Lynch* v. *Hamilton*, 3 *Taunt.* 37, 44. *Murgatroyd* v *Crawford*, 3 *Dallas*, 491. *Alsop* v. *The Com. Ins. Co.*, 1 *Sumner*, 458. *Burritt* v. *The Saratoga Mutual Ins. Co.*, 5 *Hill*, 191. 20 *N Y. Rep.* 32.) But this view was probably not suggested to the court by the language of the request.

It is, however, well settled, that a fraudulent representation, made by the applicant, though not material to the risk, will have the effect of avoiding the policy, when it is willfully or intentionally made. (1 *Arnould on Insurance*, 500, § 189. 1 *Phillips on Insurance*, § 541. *Parsons on Mercantile Law*, 430.) And the concealment of a fact specifically inquired about will produce the same result, whether it be material or not. (1 *Phillips on Insurance*, § 542.) A fraudulent concealment of a fact not inquired for, when designed or intentional, should be attended with the same consequence. The delinquency of the applicant is the same as in the case of an intentional misrepresentation. The same rule is declared to apply to both cases by Kent. He says, " The question in those cases always is whether there was under all the circumstances a fair representation or a concealment; if the misrepresentation or concealment was designed, whether it was fraudulent ; and if not designed, whether it varied materially the object of the policy, and changed the risk understood to be run. If the representation was by fraudulent design, it avoids the policy, without staying to inquire into its mate-

riality." (3 *Kent*, 351.) Parsons says: If the misstatement or concealment be immaterial, yet if it be intended and willful, it will avoid the insurance. (2 *Parsons' Maritime Law*, 162.)

The result of either of these views of the transaction is that the defendant may avoid the policy. As it is one entire contract, no separation or division of it can be made for the protection of the other interests. (2 *Parsons' Maritime Law*, 163. *Marshall* v. *Union Ins. Co.*, 2 *Wash.* 357. *Smith* v. *Empire Ins. Co.*, 25 *Barb.* 497. *Brown* v. *People's Ins. Co.*, 11 *Cush.* 280.)

The judgment should be reversed and a new trial granted.

[ERIE GENERAL TERM, February 8, 1864. *Davis, Grover* and *Daniels*, Justices.]