## ROWLEY v. THE EMPIRE INSURANCE COMPANY.

### September, 1867.

The omission of the insured to notify to the insurers other insurance on the same property, as required by the policy, does not avoid the policy if the insurers had actual knowledge of the other insurance, and the insured was ignorant of it.

Notice to the agent of an insurance company who is authorized to take applications for insurance is notice to the company.

Such an agent of an insurance company, in filling up a blank application for insurance, acts as the agent of the company rather than of the applicant. And a misstatement made therein by him, which is not induced by the instructions of the applicant, does not avoid the policy.*

Amos Rowley sued defendants, in the supreme court, on a policy issued by them on June 21, 1861, insuring him for one year from June 11, 1861, for three hundred dollars on dwelling-house, and other sums on furniture, &c. The policy contain.d a clause making it cease and of no effect " if the said insured, or his, her or their assigns, shall hereafter make any other insurance on the same property, not consented to by the secretary in writing." Annexed to the policy as a part thereof, were these conditions: " Applications for insurance must specify the nature and amount of incumbrances, if any,—if any other insurance, the amount and what company. And any misstatement or concealment relative to any of the foregoing re-

---

* See Carroll v. Charter Oak Ins. Co., vol. 1 of this series ; Le Roy v. Park Fire Ins. Co., 39 N. Y. 56 ; Same v. Market Fire Ins. Co., 45 Id. 80.

Rowley v. Empire Ins. Co.

quirements or withholding any information affecting the hazard, shall render the insurance void, the validity of the policy being based thereon."

Plaintiff's application for this insurance stated: " I own the property, there is no incumbrance."

It appeared that the application was made out by William Dean, the agent of the defendants, and on presentation to the plaintiff was signed by him. Dean was the agent of the company under written authority, to take applications for insurance in the company, and to receive the cash percentage to be paid thereon. It appeared from Dean's testimony that plaintiff signed the application in blank, and Dean afterward filled it up and forwarded it to the company. This was a second policy and made a few days after the first had expired. It also appeared that plaintiff purchased the premises of one Roswell Goff in the spring of 1860, and paid but a part of the consideration at the time, and gave Goff a mortgage for the residue of about two thousand four hundred and thirty dollars. Dean, defendants' agent, knew at the time plaintiff took out his first policy, about June, 1860, of the existence of this incumbrance ; plaintiff told him of it at the time he applied for the renewal, and at the time the present policy was issued, and plaintiff told Dean of its existence also at the time when the first policy was issued, as also when he applied for the second or present policy.

On January 29, 1861, defendants issued a policy to Goff as mortgagee upon the same dwelling-house, for the sum of three hundred dollars ; the dwelling-house being valued at the sum of six hundred dollars. It may be assumed that Goff's loss had been paid.

The jury, directed by the court, gave a verdict for plaintiff for the sum claimed, and judgment thereon was affirmed on appeal.

A. B. Capron, for the defendants, appellants.—That Dean was plaintiff's agent, cited Smith v. Empire Ins. Co., 25 Barb. 497 ; and see 6 Wend. 620 ; 13 Id. 268. That the conditions of the policy must control, in the absence of any averment of mistake. Murdock v. Chenango County Mutual Ins. Co., 2

*Comst.* 210; Jennings *v.* The same, 2 *Den.* 75; and see 25 *Barb.* 497; 18 *N. Y.* 390. That the false warranty avoided the policy. Chase *v.* Hamilton Ins. Co., 20 *N. Y.* 62, and cases cited; Jefferson Ins. Co. *v.* Cotheal, 7 *Wend.* 80; O'Neal *v.* Buffalo Ins. Co., 3 *N. Y.* (3 *Comst.*) 124; Mead *v.* N. W. Ins. Co., 7 *N. Y.* (3 *Seld.*) 535; Brown *v.* Cattaraugus County Mutual Ins. Co., 18 *N. Y.* 385, and cases there cited. That the parol evidence was inadmissible. Brown *v.* Cattaraugus County Ins. Co. (*above*); Ames *v.* N. Y. Union Ins. Co., 14 *N. Y.* 253.

*E. H. Benn,* for plaintiff, respondent.

DAVIES, Ch. J. [After stating facts and disposing of a minor question.]—It is claimed that the insurance by Goff, as mortgage of the dwelling, was a violation of that provision of the policy which declares that, in case the insured shall have any other insurance against loss by fire on the property insured, not notified to the secretary of the company, then the policy issued to the plaintiff should be void and of no effect. There are several conclusive answers to this objection :

1. The provision in the policy requiring notice to be given to the company of other insurances, relates only to other insurances by the plaintiff, and such are the express terms of the policy. Other insurance on the same property by another person is no defense, and is not a violation of this clause of the policy. Tyler *v.* Ætna Fire Ins. Co., 12 *Wend.* 507; affirmed in Ct. of Err., 16 *Wend.* 385.

2. At the time this policy was issued to the plaintiff he had no knowledge of the policy held by Goff, and he could not therefore have notified the company of its existence.

3. But the company had actual notice of the policy held by Goff at the time it issued the policy to the plaintiff on the 21st of June, 1861. Goff's policy was issued by this company on the 29th of January, 1861. And the company therefore knew on the 21st of June following, of its existence. They cannot now complain that this plaintiff did not notify them of a fact of which he had no knowledge, but of which they had actual knowledge. But the notice to Dean, the agent of the defendants, if this policy to Goff had been within the terms of the plaintiff's policy, was a sufficient notice to the company. Mc-

Ewen *v.* Montgomery County Mutual Ins. Co., 5 *Hill*, 101; Wilson *v.* Genesee Mut. Ins. Co., 14 *N. Y.* 418.

These defendants, therefore, cannot now be permitted to set up that the policy issued by them to this plaintiff is void, because he did not notify their secretary of the existence of the policy issued by themselves to Goff in the month of January previous. Neither can they be permitted to say that it is void because the plaintiff, in his application, stated that the property was unincumbered. First, because Dean, their agent, knew it was incumbered by the mortgage to Goff, and his knowledge is notice to them. And secondly, because the defendants themselves had actual knowledge of this mortgage to Goff, as, on the 29th of January previous, they insured his interest, as mortgagee of this identical property, and subsequently paid the loss which he sustained as such. The defendants, therefore, with actual notice of this incumbrance, and after insuring the holder thereof, received the premium from this defendant, and issued a policy to him, intending, as we must assume by their subsequent conduct, in case of loss, to avail themselves of the defense that there had been a technical breach of warranty by the assured. The remarks of Judge WRIGHT in the case of Ames *v.* N. Y. Union Ins. Co., 14 *N. Y.* 253, are pertinent to the case at the bar: " The defendants took the premium for insuring the plaintiff and issued the policy, well knowing that there had been verbal notice, but none in writing. Honesty and good faith demand that they should not be allowed to make the objection, now, that, though verbally notified of the incumbrance, for want of a written notice the policy is bad. They waived the necessity of such written notice, and, to prevent fraud and injustice, are estopped from making the objection. They took the plaintiff's money, and issued a policy to him upon verbal notice of the incumbrance, though the conditions of insurance required the notice to be in writing. They affirmed the policy to be valid without written notice, and the plaintiff acted upon such affirmation, and paid the consideration for insurance. The defendants ought not to be permitted to gainsay their acts when the effect would be to defraud the other contracting party." See also the case of Plumb *v.* Cattaraugus Mut. Ins. Co., 18 *N. Y.* 392.

But how much stronger is the present case. Here the defendants seek to avoid their policy, on the ground that there was an incumbrance on the property at the time they issued their policy to the plaintiff, and he did not notify them of its existence, but, on the contrary, avowed in his application that there was no incumbrance, when, in fact, the agent of the defendant, who filled up and prepared this application, well knew of the existence of this incumbrance, and the company also knew of it, and had known of it for months previously.

They also seek to avoid it, on the ground that upon a portion of the property insured there was other insurance not notified by this plaintiff to them. That other insurance was made by this company, they had full knowledge of it, and notice from this plaintiff, even if he had known of its existence, would have furnished them no additional information. As well observed by Judge GOULD in Bidwell v. N. W. Ins. Co., 24 *N. Y.* 302: "If such facts are to be held a breach of such a clause, they are a breach *eo instanti* of the making of the contract, and are so known to be by the company as well as the insured; and to allow the company to take the premium, without taking the risk, would be to encourage a fraud. It would, as a legal principle, be equivalent to holding that a warranty of the soundness of a horse is a warranty that he has four legs, when one has been cut off." See also Tallman v. Atlantic Fire & M. Ins. Co.*

The judgment should be affirmed, with costs.

FULLERTON, J.—If this court follows the decision in the case of Plumb v. Cattaraugus Mut. Co. (18 *N. Y.* 392), this judgment must be affirmed. That that case has changed the rule which has hitherto prevailed in this State relating to warranties in policies of insurance will be apparent by a brief reference to it. In that case, one Ide, in making out the application for insurance, acted as the agent and surveyor of the company. It was proved that he called upon Henry, the assured, with a printed blank application, and solicited him to

---

* Reported in this volume.

Rowley v. Empire Ins. Co.

effect an insurance with the defendants' company. Henry expressed a desire to postpone making the application, but told the agent, Ide, that if he insisted upon taking the application that day, he must get along alone, and act on his own responsibility. Ide then proceeded to make the survey alone; after which he filled up the application, and stated to Henry that it was all right, and just as it should be. Henry, without any particular examination as to the statement of the distances between, and relative situation of the buildings, told Ide that upon his representations and statements he would sign, and thereupon did sign the application, and paid the premium. This testimony was objected to, and taken under exception.

On the trial of the action brought upon the policy, the insurance company, under objection, proved that there were material errors in the survey, as to the relative positions and distances of surrounding buildings, and gave testimony tending to show that the risk was increased thereby.

The judge at the circuit directed a verdict for the plaintiffs, and, after affirmance by the general term, the judgment was appealed to this court, where it was held that the company were *estopped* from showing a breach of the warranty as to the relative situation of the buildings.

The decision was put on the ground that the insurance agent, acting within the scope of his authority, bound the principal in making the survey and filling up the application, and consequently the company could not be permitted to show that the contract was other than the writing expressed.

Mr. Justice PRATT, in delivering the opinion of the court, says: "But when the party through whose acts and representations the other party was induced to enter into the contract claims the right to show the facts were different from what he had represented them to be, for the purpose of showing a breach of the warranty, and thus avoiding what otherwise would be a binding contract, and escaping its obligations, I cannot discover why the doctrine of estoppel may not justly be applied to him, and he be precluded from denying what he once asserted. It presents, I think, the precise case for the application of the doctrine of *estoppel in pais* as defined in the cases."

It must be conceded that this case goes the whole length of establishing the doctrine that, although an application for insurance contains a false statement as to a material matter, the writing must still be held to express the contract between the parties, and that neither party can insist that the contract is other than what the writing expresses, provided such false statement is chargeable to the agent of the company in making the survey and filling up the application, while acting within the line of his duty.

That this is in conflict with the rule as it has heretofore existed is apparent. Brown v. Cattaraugus County Mut. Ins. Co., 18 *N. Y.* 385; Jennings v. Chenango Mut. Ins. Co., 2 *Den.* 75; Vandervoort v. Smith, 2 *Cai.* 155; Cheriot v. Barker, 2 *Johns.* 346; Higginson v. Dall, 13 *Mass.* 96, 172; Weston v. Emes, 1 *Taunt.* 115; Atherton v. Brown, 14 *Mass.* 162; Parks v. General Ins. Co., 5 *Pick.* 34; Flinn v. Tabrin, 1 *Moody & M.* 367.

This brings me to the examination of the facts in the present case.

The written appointment of the agent Dean shows that he was the agent of the defendant " *to take applications* for insurance in the company, and to receive the cash percentage to be paid thereon."

Acting under this authority the agent received the plaintiff's application for insurance. The manner of doing it was as follows: Rowley stated verbally to the agent the facts necessary to meet the requirements of the rules of the company, and, among other things, informed him that the premises *were* incumbered by a mortgage.

An application was then signed in blank by the plaintiff, and given to the agent; he promising to insert over, the signature thus obtained, the particulars thus furnished him, as a basis of the insurance, on his return to his residence.

The agent Dean was a witness on the trial of the case, and in giving the interview between himself and Rowley, at this time, says: " He (Rowley) made no objection to my taking it (the application), and filling it up at Horsehead's, *if it would be all right.*"

The just and natural inference from this language is, that this unusual mode of doing the business was at the suggestion

or request of the agent. But, be that as it may, for some reason unexplained, the agent, on his return, in filling up the application, inserted what was *not* the fact, and in violation of his instructions; viz: a statement that there was *no* incumbrance on the premises. The defendant now seeks to avoid its liability on the policy, alleging that this statement was a warranty on the part of the assured, and that it was false.

The appellant's counsel contends that Dean, in filling up this application, was the agent of the plaintiff, and that the company is in no wise responsible for the mistake. I am aware that he is sustained in this position by the opinion of Mr. Justice BALCOM, in Smith *v.* Empire Ins. Co., 25 *Barb.* 497; but I do not think this court should adopt that rule in this case.

Considering the authority of Dean in its most limited sense, "to *take* applications for insurance," I think he must be con sidered the agent of the insurer rather than of the assured, in filling up the application.

His duty to his principal was to *take the application* for insurance. It cannot be said that that duty was performed when he received the blank paper signed by Rowley, because the application was then in an inchoate state.

The conditions of insurance plainly contemplate that it should be in writing, and such was the intention of the parties. When, therefore, was the duty which the agent owed the company at an end, so that he ceased to bind his principal? It is not establishing a harsh or unreasonable rule in reference to insurance companies, to hold that their agents, authorized "to take applications for insurance," are acting within the scope of their authority in everything which they do which may be necessary to complete such applications.

I must therefore regard Dean as in the act of *taking* the application when he was filling up the blank signed by the plaintiff, and therefore acting on behalf of the defendant. Any other rule would be fraught with mischief. Insurance companies send out an army of agents to solicit business. Property holders are waited upon by them at their residences, and it is not going too far to say that many of the applicants would be unable to make a proper application and survey to meet the

rigid and elaborate requirements of these corporations, while experience shows that they are not expected to do so.

Hence, these agents render such services as are necessary, to enable the contracting parties to attain their respective objects, the one to insure and the other to become insured against fire. To hold that in performing these preliminary labors touching the very business which must necessarily be transacted before a policy can be effected, the insurance broker becomes the agent of the applicant for insurance, would seem to be an unnecessary and undesirable refinement. I repeat, that in performing these preliminary labors, the agent is engaged in *taking the application,* which is strictly within his duty, and the principal should be held responsible for any error he may commit; especially when the error consists in recording a false statement over the signature of a confiding applicant, which, it is claimed, vitiates the whole contract. Rowley, in this case, told the truth in regard to the incumbrance on the property, and in that respect discharged his duty. That satisfied the claims of morality and fair dealing, and ought to meet the requirnments of the law. Masters *v.* Madison County Mut. Ins. Co., 11 *Barb.* 624. If these views are concurred in, then the defendant, on the principle of Plumb *v.* Cattaraugus Ins. Co., *supra,* is estopped from showing its own error to defeat its contract.

This disposes of the only question raised by the appellant's brief. Another point is made, however, in the bill of exceptions, which will be briefly considered.

It was alleged in the answer, and proved on the trial, that Goff, the former owner of the premises, had insured his interest as mortgagee in this same property, and that the plaintiff had failed to make known that fact, when he effected his policy, as he was required to do by the conditions of the insurance.

This raises a mere question of notice ; and the point is met by the proof that Goff's policy was issued *by the defendant,* and the plaintiff was ignorant of that fact. Ames *v.* N. Y. Union Ins. Co., 14 *N. Y.* (4 *Kern.*) 253.

The law is not so unreasonable as to declare void a contract of insurance on the ground that the assured did not make known the existence of a policy of which he had never heard,

to a company which had issued it, and necessarily knew of its existence.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs.