MILO MARSH AND ANOTHER, APPELLANTS, v. URI GILBERT AND OTHERS, RESPONDENTS.

*Agent — when principal bound by acts of — Termination of agency — when notice of, should be given.*

The defendants employed one B. to build a dock for them, defendants to furnish the materials therefor. B. having ordered timber of the plaintiffs, they applied to the defendants, and were informed by them that B. had agreed to repair the dock, and that if plaintiffs would furnish the timber, they, the defendants, would pay for it. Timber was furnished by the plaintiffs to B., some of which was used in repairing the dock, and the remainder in building a new dock for the defendants, in pursuance of a second contract entered into by them with B., by which B. was to furnish the materials.

Neither plaintiffs nor defendants knew that any portion of the timber had been used in the new dock, and defendants had paid B. in full for building it. B. having died insolvent, this action was brought to recover the price of the timber. *Held*, (1.) That when the defendants authorized B. to buy upon their

credit so much timber as he should want for a specific purpose, they made him
their agent to determine the amount of lumber needed, and that the plaintiffs
were not bound to see that it was used for that purpose, or inform themselves
when such purpose was accomplished; (2.) that it was negligence in the defend-
ants not to notify plaintiffs when B.'s agency ceased, or when his requirement
for lumber, under the first contract, was filled; and that, as they had put it in
B.'s power to do this injury, they must bear the loss.

APPEAL from a judgment, entered upon the report of a referee.
The facts are stated in the opinion.

*R. A. Parmenter*, for the appellants.

*Martin I. Townsend*, for the respondents.

BOARDMAN, J.:

About April 1, 1872, the defendants employed one Beaulac to
repair their dock on Green Island near Troy, and defendants were
to furnish the materials therefor. Beaulac called upon plaintiffs,
who are lumber dealers at West Troy, to buy the necessary lumber
for the defendants. The plaintiffs, having no confidence in Beaulac,
who was unworthy of credit, went to see the defendants, and told
them what Beaulac wanted and had ordered on their account.
Mr. Gilbert, one of the defendants, replied, they (defendants) were
going to build a dock or to repair a dock. Beaulac had agreed to
do the work, and, if plaintiffs would furnish the timber, the
defendants would pay them for it. Plaintiffs said, we will charge
the lumber to you (defendants) and Gilbert said, all right. In fact,
the contract between defendants and Beaulac at that time, was for
the repair of a dock, but the referee's findings, like the evidence,
are contradictory.

In pursuance of such understanding, Beaulac, by the 25th of
May, 1872, had ordered lumber and timber for docking, of the
plaintiffs, to the value of $552.13, which had been delivered upon
defendants' premises. The repairs of the dock were completed on
the thirteenth of April, and all of the timber that was used for such
repairs, was delivered before that date, and was of the value of
$48.37. On the first of May, Beaulac made a new contract with
defendants, to *build* about 300 feet of new dock, and furnish the
materials. That work was completed about the twenty-fifth of

May, and, in such new dock, much of the lumber ordered by Beaulac of plaintiffs, was used.

From the first of April to the twenty-fifth of May, neither plaintiffs nor defendants had any knowledge or suspicion that Beaulac was getting lumber of plaintiffs on defendants' account and credit without right or authority. Defendants had done nothing to advise plaintiffs of. the termination of Beaulac's authority, and plaintiffs ·had done nothing to ascertain the use which was being made by Beaulac of the lumber got of them, and delivered upon defendants' premises.

On or about the twenty-fifth of May, Beaulac called upon plaintiffs for a bill for defendants. The bill was made out and taken away. Afterward, at Beaulac's request, the account was made out in two bills, one including only the $48.37, and the other, the remainder of the account, but no reason for such request was assigned.

When plaintiffs and defendants met to settle the account, each party, for the first time, discovered that Beaulac had acted fraudulently and without authority, in continuing to get lumber of plaintiffs on defendants' account after April thirteenth. The defendants, however, had paid Beaulac in full for building the new dock, and were not owing him anything. They therefore declined to pay anything beyond the $48.37. Plaintiffs brought action for the whole account. Upon the trial, the referee found for plaintiffs only the above sum of $48.37. As defendants had made an offer to allow judgment of $51, judgment for such first sum, with interest and costs before defendants' offer, was given for the plaintiffs, and the defendants had judgment for their costs after the date of such offer.

The whole case shows that the parties were innocent of any design to do wrong. The whole mischief arises from the wrongful acts of Beaulac, in continuing to purchase lumber and timber of the plaintiffs upon defendants' credit, after the repairs of the dock were finished, and while building defendants' new dock. But Beaulac had in the meantime died insolvent. Now, as between these innocent parties, who shall suffer the loss arising from Beaulac's unwarranted conduct?

If the act of Beaulac was within the terms of his authority, the defendants would be liable. If he had an apparent right during

the months of April and May, to buy docking timber of plaintiffs, upon the credit of defendants, such authority became real, though in excess of what was intended to be given. It was not incumbent upon the plaintiffs to inquire into the existence of facts outside their own knowledge, and peculiarly within the knowledge of the agent and his principal. The principal is bound by the acts of his agent within the apparent scope of his authority. When the defendants authorized Beaulac to buy upon their credit so much timber as he should want for a specific purpose, they made him their agent to determine the amount of lumber needed. It did not impose upon the plaintiffs the necessity of watching the timber to see that it went to that use, or to inform themselves when the purpose was accomplished.* This case was reversed in the Court of Errors, but has repeatedly been adopted and reaffirmed in the Court of Appeals, as good law. †

In the case of *North River Bank* v. *Aymar*, Judge COWEN says : " Whenever the very act of the agent " [in this case the buying lumber of plaintiffs on the defendants' account] " is authorized by the terms of the power, that is, whenever by comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used, such act is binding on the constituent as to all persons dealing in good faith with the agent ; such persons are not bound to inquire into facts *aliunde*. The apparent authority is the real authority."

Evidently the authority given in this case, was to buy lumber on credit of defendants. Whether it was to repair or build a dock, was of no consequence upon the question of credit. No known or ascertainable limit was fixed as to amount. None could be fixed, until the work was well in progress. It was understood that Beaulac was to order the timber and do the work. He only knew how much to order. The plaintiffs had no knowledge, or means of knowing how much would be wanted. It was therefore clear, they could not fix any limit. Neither could defendants, except through Beaulac, determine that fact. It was therefore an apparent neces-

* N. Y. and N. H. R. R. Co. v. Schuyler, 34 N. Y., 30, 49, 53 ; 2 Kent Com., and No. 6 ; North River Bank v. Aymar, 3 Hill, 262.

† 14 N. Y., 62? ; 16 id., 125; 25 id., 595; 26 id., 505 ; Prest. Westfield Bank v. Cornen, 37 N. Y., 320 ; Story on Sales, § 70.

sity that Beaulac should be authorized to order any quantity he should deem necessary. He was then defendants' agent to buy on credit, without limit as to quantity. In so doing, he acted within the scope of his authority, and the defendants were bound by his acts. There is nothing in the findings of the referee, or in the evidence, seriously conflicting with such a determination.

Upon another familiar rule, defendants ought to be held responsible. Of these innocent parties, one must suffer the loss. He or they should suffer, who has put it in the power of Beaulac to do this injury. The plaintiffs have sold the lumber on the order of Beaulac. They delivered the lumber on defendants' premises. It was used in building or repairing defendants' docks. The orders for, and delivery of, lumber were continuous from April third to May twenty-fifth. Nothing occurred to create a doubt, or excite a suspicion of Beaulac. On the contrary, the defendants knew when Beaulac finished the first job, and settled with him for his labor. They knew that other docking timber was being delivered on their premises. They knew, or might naturally suppose, that plaintiffs could not tell when Beaulac's agency ceased, or when his requirements for lumber under the first contract were filled. If, then, they desired to protect themselves, it was their duty to notify plaintiffs of the termination of Beaulac's agency. It was negligence on their part, to leave Beaulac in possession of the power to do this injury. It was all the more so, since they knew Beaulac was unworthy of credit, and that plaintiffs were only dealing with him on defendants' credit.

By such negligence, as well as by express authority, the defendants have enabled Beaulac to obtain the property involved in this action. If you concede for the moment, that Beaulac acted in excess of his authority, though within the general scope of his employment, the defendants would be responsible to plaintiffs, provided they acted in good faith, and in the honest belief of his authority. *

Beaulac was defendants' agent and in their employ; they gave and intended to give him authority to buy the kind of property in suit, upon their credit, of plaintiffs. No actual limitation of the

* Clark v. Metrop. Bk., 3 Duer, 241, 248; Smith v. Emp. Ins. Co., 25 Barb., 497; Sandford v. Handy, 23 Wend., 260, 268.

amount of such purchases was made known to plaintiffs. In no respect were they cautioned as to their reliance upon Beaulac's orders. The defendants agreed to be responsible for the lumber bought by Beaulac. They were told it would be charged to them, and assented thereto. In the absence of any restriction, why had not the plaintiffs a right to suppose the defendants would notify them of the termination of the authority? Was not such the defendants' duty if they would avoid responsibility for Beaulac's conduct? How was it plaintiffs' duty to watch defendants' agent, whom defendants had put in power, and whose trustworthiness they had indorsed by their order to let him have what he wanted? Good faith and justice seem to me to require that the defendants, under the circumstances, should, be held responsible for the whole debt contracted by Beaulac with the plaintiffs.

Believing that the learned referee fell into an error, in rejecting that portion of the accounts which accrued after the 13th of April, 1872, I think the judgment should be reversed and a new trial granted, costs to abide the event.

MILLER, P. J., and BOOKES, J., concurred.

Judgment reversed and new trial granted, costs to abide the event.