MARSH, appellant, v. GILBERT.

*Agency — liability of principal to third persons — when contract terminates — materials furnished to one person on credit of another.*

In April, defendants employed B. to repair their dock, they agreeing to furnish the materials. Defendants told plaintiffs, lumber dealers in a neighboring village, if they would furnish the lumber for the dock defendants would pay them for it. B. was to get the lumber from plaintiffs, and he accordingly ordered quantities from time to time until May 25. It appeared, however, that B. had completed the repairs on the dock before May 1, on which date defendants had made a new contract with B. to build a new dock, B. agreeing to furnish the materials, and a large part of the lumber which B. obtained of plaintiffs was used on the new dock. Defendants did not know that B. was getting lumber for the new dock on their account, and plaintiffs did not know the use which B. was making of the lumber. Defendants having paid B. in full for building the new dock refused to pay plaintiffs for the lumber ordered after the old dock was repaired. *Held*, that defendants were liable for the whole value of the lumber. B. was defendants' agent to buy on credit, without a fixed limit as to quantity, and he acted within the scope of his apparent authority. And the lumber having been used in building defendants' docks, and B. having died insolvent, pending suit, defendants ought to be responsible, both parties being innocent.

APPEAL by plaintiffs from a judgment entered on the report of a referee. The action was brought by Milo Marsh and George M. Wiswall against Uri Gilbert, Walter R. Bush and others to recover the amount of a bill for timber alleged to have been sold and delivered by plaintiffs to defendants. The opinion states the facts.

*Flagg & Neary* and *R. A. Parmenter*, for appellants, cited *North River Bank* v. *Aymar*, 3 Hill, 262; *Farmers' Bank* v. *Butch. & Drov. Bank*, 14 N. Y. 631, 632; *Griswold* v. *Haven*, 25 id. 599; *Exchange Bank* v. *Monteath*, 26 id. 505; *President, etc.*, v. *Cornen*, 37 id. 320–322; Dunlop's Paley on Agency, 161, § 2.

*Townsends & Browne*, for respondents.

BOARDMAN, J. About April 1, 1872, defendants employed one Beaulac to repair their dock on Green Island, near Troy, and defendants were to furnish the materials therefor. Beaulac called upon plaintiffs, who are lumber dealers at West Troy, to buy the necessary lumber for the defendants. The plaintiffs having no confidence in Beaulac, who was unworthy of credit, went to see defendants and told them what Beaulac wanted and had ordered on their account. Mr. Gilbert, one of defendants, replied they (defendants) were going to build a dock or to repair a dock. Beaulac had agreed to do the work, and if plaintiffs would furnish the timber the defendants would pay them for it. Plaintiffs said, "We will charge the lumber to you" (defendants), and Gilbert said, "All right." In fact, the contract between defendants and Beaulac at that time was for the repair of a dock, but the referee's findings, like the evidence, are contradictory.

In pursuance of such understanding, Beaulac, by the 25th of May, 1872, had ordered lumber and timber for docking of the plaintiffs to the value of $552.13, which had been delivered upon defendants' premises. The repairs of the dock were completed on the 13th of April, and all of the timber that was used for such repairs was delivered before that date, and was for the value of $48.37. On the 1st of May, Beaulac made a new contract with defendants to *build* about three hundred feet of new dock, and furnish the materials. That work was completed about the 25th of May, and in such new dock much of the lumber ordered by Beaulac of plaintiffs was used.

From the 1st of April to the 25th of May, neither plaintiffs nor defendants had any knowledge or suspicion that Beaulac was getting lumber of plaintiffs on defendants' account and credit, without right or authority. Defendants had done nothing to advise plaintiffs of the termination of Beaulac's authority, and plaintiffs had done nothing to ascertain the use which was being made by Beaulac of the lumber got of them and delivered upon defendants' premises.

On or about the 25th of May, Beaulac called upon plaintiffs for a bill for defendants. The bill was made out and taken away. Afterward, at Beaulac's request, the account was made out in two bills, one including only the $48.37, and the other the remainder of the account, but no reason for such request was assigned.

When plaintiffs and defendants met to settle the account, each party, for the first time, discovered that Beaulac had acted fraudulently and without authority in continuing to get lumber of plaintiffs on defendants' account after April 13. The defendants, however, had paid Beaulac in full for building the new dock and were not owing him any thing ; they, therefore, declined to pay any thing beyond the $48.37.

Plaintiffs brought action for the whole account. Upon the trial the referee found for plaintiffs only the above sum of $48.37. As defendants had made an offer to allow judgment for $51, judgment for such first sum, with interest and costs, before defendants' offer was given for the plaintiffs, and the defendants had judgment for their costs after the date of such offer.

The whole case shows that the parties were innocent of any design to do wrong. The whole mischief arises from the wrongful acts of Beaulac in continuing to purchase lumber and timber of the plaintiff upon defendant's credit after the repairs of the dock were finished and while building defendants' new dock. But Beaulac has in the meantime died insolvent. Now, as between these innocent parties, who shall suffer the loss arising from Beaulac's unwarranted conduct?

If the act of Beaulac's was within the terms of his authority, the defendants would be liable. If he had an apparent right during the months of April and May to buy docking timber of plaintiffs upon the credit of defendants, such authority became real, though in excess of what was intended to be given. It was not incumbent upon the plaintiffs to inquire into the existence of facts outside their own knowledge, and peculiarly within the knowledge of the agent and his principal. The principal is bound by the acts of his agent, within the apparent scope of his authority. When the defendants authorized Beaulac to buy upon their credit so much timber as he should want for a specific purpose, they made him their agent to determine the amount of lumber needed. It did not impose upon the plaintiffs the necessity of watching the timber to see that it went to that use or to inform themselves when the pur-

pose was accomplished. *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 49, 53; 2 Kent's Com. 621 and note (6); *North River Bk.* v. *Aymar*, 3 Hill, 262. This case was reversed in the court of errors, but has repeatedly been adopted and reaffirmed by the court of appeals as good law. *F. & M. Bank* v. *B. & D. Bank*, 14 N. Y. 623; S. C., 16 id. 125; *Hayes* v. *People*, 25 id. 595; *Exchange Bank* v. *Monteath*, 26 id. 505; *M. S. Bank* v. *City of Rochester*, 37 id. 370, etc.; *Pres't of Westfield Bank* v. *Cornen*, id. 320; Story on Sales, § 70.

In the case of *North River Bank* v. *Aymar*, Judge COWEN says: "Whenever the very act of the agent" (in this case the buying lumber of plaintiffs on the defendants' account) "is authorized by the terms of the power — that is, whenever, by comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used — such act is binding on the constituent as to all persons dealing in good faith with the agent. Such persons are not bound to inquire into facts *aliunde*. The apparent authority is the real authority."

Evidently the authority given in this case was to buy lumber on credit of defendants. Whether it was to repair or build a dock was of no consequence upon the question of credit. No known or ascertainable limit was fixed as to amount. None could be fixed until the work was well in progress. It was understood that Beaulac was to order the timber and do the work. He only knew how much to order. The plaintiffs had no knowledge or means of knowing how much would be wanted. It was, therefore, clear they could not fix any limit. Neither could the defendants, except through Beaulac, determine that fact. It was, therefore, an apparent necessity that Beaulac should be authorized to order any quantity he deemed necessary. He was then defendants' agent to buy on credit without limit as to quantity. In so doing he acted within the scope of his authority, and the defendants were bound by his acts. There is nothing in the finding of the referee or in the evidence seriously conflicting with such a determination.

Upon another familiar rule defendant ought to be held responsible. Of these innocent parties one must suffer this loss. He or they should suffer who has put it in the power of Beaulac to do this injury. The plaintiffs have sold the lumber on the order of Beaulac. They delivered the lumber on defendants' premises. It was used in building or repairing defendants' docks. The orders

for and delivery of lumber were continuous from April 3d to May 25th. Nothing occurred to create a doubt or excite a suspicion of Beaulac. On the contrary, the defendants knew when Beaulac finished the first job and settled with him for his labor. They knew that other docking timber was being delivered upon their premises. They knew or might naturally suppose that plaintiffs could not tell when Beaulac's agency ceased, or when his requirements for lumber under the first contract were filled. If, then, they desired to protect themselves, it was their duty to notify plaintiffs of the termination of Beaulac's agency. It was negligence upon their part to leave Beaulac in possession of the power to do this injury. It was all the more so since they knew Beaulac was unworthy of credit, and that plaintiffs were only dealing with him on defendants' credit.

By such negligence, as well as by express authority, the defendants have enabled Beaulac to obtain the property involved in this action. If you concede for the moment that Beaulac acted in excess of his authority, though within the general scope of his employment, the defendants would be responsible to the plaintiffs, provided they acted in good faith and in the honest belief of his authority. *Clark* v. *Metrop. Bank,* 3 Duer, 241, 248; *Smith* v. *Empire Ins. Co.,* 25 Barb. 497; *Sanford* v. *Handy,* 23 Wend. 260, 268.

Beaulac was defendants' agent and in their employ. They gave and intended to give him authority to buy the kind of property in suit, upon their credit, of plaintiffs. No actual limitation of the amount of such purchases was made known to plaintiffs. In no respect were they cautioned as to their reliance upon Beaulac's orders. The defendants agreed to be responsible for the lumber bought by Beaulac. They were told it would be charged to them, and assented thereto. In the absence of any restriction, why had not the plaintiffs a right to suppose the defendant would notify them of the termination of the authority? Was not such the defendants' duty, if they would avoid responsibility for Beaulac's conduct? How was it plaintiffs' duty to watch defendants' agent, whom the defendants had put in power, and whose trustworthiness they had indorsed by their order to let him have what he wanted? Good faith and justice seem to me to require that the defendants, under the circumstances, should be held responsible for the whole debt contracted by Beaulac with the plaintiffs.

Believing that the learned referee fell into an error in rejecting

that portion of the account which accrued after the 13th of April, 1872, I think the judgment should be reversed and a new trial granted, costs to abide the event.

*Judgment reversed, and new trial granted.*