36 N. Y. 550-CRITICISED, 56 N. Y. 565.  DISTIN-
GUISHED, 2 Hun 404; 4 T. & C. 584.  FOLLOWED, 2
Hun 659; 1 T. & C. 287; 5 Id. 211.

### . AMOS ROWLEY v. THE EMPIRE INSURANCE COMPANY.

An agent, authorized to take applications for insurance, should be deemed
to be acting within the scope of his authority where he fills up the
blank application of insurance; and if, by his fault or negligence, it con-
tains a material misstatement, not authorized by the instructions of the
party who signs it, the wrong should be imputed to the company, and
not to the assured.

A policy of insurance should not be avoided for an error by the agent of
the company, acting within the general scope of his power, on the arti-
ficial and unwarranted assumption that he is the agent of the other
party to the contract.

*A. B. Capron*, for the appellant.

*E. H. Benn*, for the respondent.

FULLERTON, J.   If this court follows the decision in the
case of *Plumb* v. *The Cattaraugus County Mutual Insurance
Company* (18 N. Y., 392), this judgment must be affirmed.
That this case has changed the rule which has hitherto pre-
vailed in this State relating to warranties. in policies of
insurance will be made apparent by a brief reference to it.
In that case, one Ide, in making out the application for
insurance, acted as the agent and surveyor of the company.
It was proved that he called upon Henry, the assured, with
a printed blank application, and solicited him to effect an
insurance with the defendant's company.   Henry expressed
a desire to postpone making the application, but told the
agent, Ide, that if he insisted upon taking the application
that day, he must get along alone, and act on his own
responsibility.   Ide then proceeded to make the survey alone;
after which he filled up the application, and stated to Henry
that it was all right, and just as it should be.   Henry,
without any particular examination as to the statement of
the distances between, and relative situation of the buildings,
told Ide that upon his representations and statements he

would sign, and thereupon did sign the application, and paid the premium. This testimony was objected to, and taken under exception.

On the trial of the action brought upon the policy, the insurance company, under objection, proved that there were material errors in the survey, as to the relative positions and distances of surrounding buildings, and gave testimony tending to show that the risk was increased thereby.

The judge at the circuit directed a verdict for the plaintiff, and, after affirmance by the General Term, the judgment was appealed to this court, where it was held that the company was *estopped* from showing a breach of the warranty as to the relative situation of the buildings.

This decision was put on the ground that the insurance agent, acting within the scope of his authority, bound the principal in making the survey and filling up the application, and consequently the company could not be permitted to show that the contract was other than the writing expressed.

Mr. Justice PRATT, in delivering the opinion of the court, says: " But when the party through whose acts and representations the other party was induced to enter into the contract claims the right to show the facts were different from what he had represented them to be, for the purpose of showing a breach of the warranty, and thus avoiding what would otherwise be a binding contract and escaping its obligations, I cannot discover why the doctrine of estoppel may not justly be applied to him, and he be precluded from denying what he once asserted. It presents, I think, the precise case for the application of the doctrine of *estoppel in pais* as defined in the cases."

It must be conceded that this case goes the whole length of establishing the doctrine that, although an application for insurance contains a false statement as to a material matter, the writing must still be held to express the contract between the parties, and that neither party can insist that the contract is other than what the writing expresses, provided such false statement is chargeable to the agent of the company in

making the survey and filling up the application, while acting within the line of his duty.

That this is in conflict with the rule as it has heretofore existed is apparent. (*Brown* v. *The Cattaraugus County Mutual Insurance Company*, 18 N. Y., 385.; *Jennings* v. *The Chenango County Mutual Insurance Company*, 2 Denio, 75; *Vandervorst* v. *The Columbian Insurance Company*, 2 Caines, 155; *Cheriot* v. *Barker*, 2 Johns., 346; *Higginson* v. *Dall*, 13 Mass., 96, 172; *Weston* v. *Emes*, 1 Taunt., 115; *Atherton* v. *Brown*, 14 Mass., 152; *Parks* v. *General Insurance Company*, 5 Pick., 34; *Flinn* v. *Tabrin*, 1 Moody & Malk., 367.)

This brings me to the examination of the facts in the present case.

The written appointment of the agent Dean shows that he was the agent of the defendant "*to take applications* for insurance in the company, and receive the cash percentage to be paid thereon."

Acting under this authority the agent received the plaintiff's application for insurance. The manner of doing it was as follows: Rowley stated verbally to the agent the facts necessary to meet the requirements of the rules of the company, and, among other things, informed him that the premises *were* incumbered by mortgage.

An application was then signed in blank by the plaintiff, and given to the agent; he promising to insert over the signature thus obtained, the particulars thus furnished him, as a basis of the insurance, on his return to his residence.

The agent Dean was a witness on the trial of the case, and in giving the interview between himself and Rowley, at this time, says: "He" (Rowley) "made no objection to my taking 'it' (the application)" and filling it up at "Horseheads, *if it would be all right.*"

The just and natural inference from this languge is, that this unusual mode of doing the business was at the suggestion or request of the agent. But, be that as it may, for some reason unexplained, the agent, on his return, in filling up the application, inserted what was *not* the fact, and in violation of his

instructions; that there was *no* incumbrance on the premises. The defendant now seeks to avoid its liability on the policy, alleging that this statement was a warranty on the part of the assured, and that it was false.

The appellant's counsel contends that Dean, in filling up this application, was the agent of the plaintiff, and that the company is in no wise responsible for the mistake. I am aware that he is sustained in this position by the opinion of Mr. Justice BALCOM, in *Smith* v. *The Empire Insurance Co.* (25 Barb., 497); but I do not think this court should adopt that rule in this case.

Considering the authority of Dean in its most limited sense, "to *take* applications for insurance," I think he must be considered the agent of the insurer rather than of the assured, in filling up the application.

His duty to his principal was to *take the application* for insurance. It cannot be said that that duty was performed when he received the blank paper signed by Rowley, because the application was then in an inchoate state.

The conditions of insurance plainly contemplate that it should be in writing, and such was the intention of the parties. When, therefore, was the duty which the agent owed to the company at an end, so that he ceased to bind his principal? It is not establishing a harsh or unreasonable rule in reference to insurance companies, to hold that their agents, authorized "to take applications for insurance," are acting within the scope of their authority in every thing which they do which may be necessary to complete such applications.

I must therefore regard Dean as in the act of *taking* the application when he was filling up the blank signed by the plaintiff, and therefore acting on behalf of the defendant. Any other rule would be fraught with mischief. Insurance companies send out an army of agents to solicit business. Property holders are waited upon by them at their residences; and it is not going too far to say that many of the applicants would be unable to make a proper application and survey to meet the rigid and elaborate requirements of these

corporations, while experience shows that they are not expected to do so.

Hence, these agents render such services as are necessary, to enable the contracting parties to attain their respective objects, the one to insure and the other to become insured against fire. To hold that in performing these preliminary labors touching the very business which must necessarily be transacted before a policy can be effected, the insurance broker becomes the agent of the applicant for insurance, would seem to be an unnecessary and undesirable refinement. I repeat, that in performing these preliminary labors, the agent is engaged in *taking the application*, which is strictly within his duty, and the principal should be held responsible for any error he may commit; especially when the error consists in recording a false statement over the signature of a confiding applicant, which, it is claimed, vitiates the whole contract. Rowley, in this case, told the truth in regard to the incumbrance on the property, and in that respect discharged his duty. That satisfied the claims of morality and fair dealing, and ought to meet the requirements of the law. ( *Vide Masters* v. *Madison County Insurance Company*, 11 Barb., 624.) If these views are concurred in, then the defendant, on the principle of *Plumb* v. *The Cattaraugus Insurance Company* (*supra*), is estopped from showing its own error to defeat its contract.

This disposes of the only question raised by the appellant's brief. Another point is made, however, in the bill of exceptions, which will be briefly considered.

It was alleged in the answer, and proved on the trial, that Goff, the former owner of the premises, had insured his interest as mortgagee in this same property, and that the plaintiff had failed to make known that fact, when he effected his policy, as he was required to do by the conditions of insurance.

This raises a mere question of notice; and the point is met by the proof that Goff's policy was issued *by the defendant*, and the plaintiff was ignorant of that fact. (*Ames* v. *N. Y. Union Insurance Co.*, 14 N. Y., 253.)

The law is not so unreasonable as to declare void a contract of insurance on the ground that the assured did not make known the existence of a policy of which he had never heard, to a company which had issued it, and necessarily knew of its existence.

The judgment should be affirmed, with costs.

All concur, except BOCKES, J., not voting, and GROVER, J., dissenting.

Affirmed.