OWENS v. THE HOLLAND PURCHASE INSURANCE CO., appellant.

*Insurance — fire policy — overstating value in application and proof of loss. When company bound by knowledge of agent.*

In an action upon an insurance policy, it appeared that in the application the total value of the buildings insured and the land on which they were situated was overstated. In such application, the applicant agreed and warranted that the valuation, etc., were correct. The application was made out from the verbal statements of the applicant, by an agent of the insurance company, who was familiar with the property insured. It was shown that the value mentioned was not given by the applicant as that of the real estate alone, and that he signed the application without reading it.

*Held*, following *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550, that the insurance company was liable, notwithstanding the overvaluation contained in the application.

In his proof of loss plaintiff overstated the market value of some potatoes and the damage done to a piano. *Held*, that such valuation, not being shown to be corrupt or dishonest, did not invalidate the policy.

*Quere.* — Whether a representation of value can be treated as a warranty.

APPEAL from judgment in favor of the plaintiff, entered upon the report of referee for $1,417.09. The facts in the case sufficiently appear in the opinion.

*Peck & Bowen,* for appellants.

*Hart & Tomlinson,* for respondents.

BOARDMAN, J. The plaintiff procured of the defendant insurance on his buildings and personal property in the sum of $4,500, of which $1,000 was on dwelling-house and wood-house, $500 on cow-house ·and cheese-house, and the remainder on certain personal property described in policy. In the application for the policy the dwelling-house and wood-house are estimated of the cash value of $1,500, and the cow-house and cheese-house of the cash value of $1,000. In a subsequent part of the application it is stated that the same is incumbered in the sum of $8,000, and that the value of land and buildings is $14,000.

This application was made out by one Price, who was the agent of the defendant, from information derived from the applicant, as

Price supposed and intended. Price was present and personally examined the property insured. The conditions of insurance attached to the policy, and made a part thereof, required applications for insurance to be made in writing; that they "should be made out by an authorized agent of the company; the company to be bound by the survey, but not in all cases to be concluded by the agent's valuation of the property."

The plaintiff signed the application without reading it, as he swears, and agreed and warranted that the valuation, etc., were correct. The referee finds the value of the dwelling-house, which was accidentally burned during the life of the policy, to be $1,500, being more than was represented in said application. He also finds the value of the lands and buildings "not less than $10,000, nor more than $12,000," being less than stated in the application.

It also appears that plaintiff, in his proofs of loss, overstated the market value of potatoes and the damage done to a piano insured.

The defendant asks that the judgment upon the report of the referee be set aside and a new trial granted upon the grounds:

1st. That plaintiff was guilty of a breach of warranty in fixing the value of the land and buildings at $14,000, whereby the policy was avoided.

2d. That plaintiff was guilty of misrepresentation, fraud and false swearing in relation to the value of potatoes destroyed and the damages to a piano, whereby he had forfeited all claims under his policy.

The decision of these two points, in effect decides all questions and exceptions presented by the defendant in the case. For the objections and exceptions to the admissibility of evidence or to the decisions of the referee bring us back in each instance to the principles of law involved in the above propositions. Upon the trial the plaintiff swore as follows: " Price filled out the application, and when he got through he said to me: Is the farm and property insured worth $14,000 ? I said to him, I should think it was; I did not tell him the value of the buildings and farm alone was $14,000; I was not asked by him the valuation of the land and buildings alone ; I told him I gave $10,000, or was to, for the real estate, and had paid $2,000, and the other $8,000 was on mortgage against the premises." * * * " I don't think I read the application at all. * * * I signed it and he took it and went away." It also appears that defendant's agent was familiar with the plaintiff's premises and knew the value thereof, and had taken prior insurance thereon. The

referee finds that plaintiff did not direct the value of the lands and buildings only to be inserted in the application at $14,000, but that such valuation as given to defendant's agent covered the personal property insured also. These facts, found by the referee and justified by the evidence, bring this case precisely within the principle laid down by the court of appeals in *Rowley* v. *The Empire Insurance Co.*, 36 N. Y. 550; and S. C., 3 Keyes, 557, in which all the judges concurred except perhaps one. It is there held that an agent authorized to take application for insurance should be deemed to be acting within the scope of his authority when he fills up the blank application for insurance; and if, by his fault or negligence, it contains a material misstatement not authorized by the instructions of the party who signs it, the wrong should be imputed to the company and not to the assured.

The case is perhaps an extreme one and is severely criticised by the appellant's counsel. But I think every one familiar with the manner in which agents procure applications for insurance will say that a contrary rule will expose the community to the irresponsible, careless or dishonest acts of an army of agents selected and sent out by the companies, such agents being only interested in securing their own commissions. Let it be conceded that it is the duty of the applicants to read and know what they sign. The large portion of such persons are unskilled in business, accustomed to trust to others in the transaction of their affairs, perhaps ignorant, certainly incapable of judging accurately as to the effect of the various covenants, agreements, warranties, terms, conditions, provisos, limitations and exceptions with which insurance papers are filled and surrounded. The same persons are honest, as a rule, simply desiring to be insured, and their property is such as is entitled to be insured, upon a true statement of facts. The agent wants to insure it and get his commission. He knows the property is insurable, and with more or less haste or care makes out the application, tells the party it is all right and to sign it, and it is signed upon the trust and confidence that it truly represents what he has honestly told the agent. Is it not better in such cases that the company should be responsible for the blunders of its agents rather than the innocent party who is without fault, except his inexperience and lack of shrewdness to detect and expose the error. Both parties intend to effect an insurance. The true state of facts would not prevent it.

The house in this case insured was worth more than plaintiff

represented it. That was the material fact for the company to know. The plaintiff's interest in the real estate was more than the amount insured thereon. Why, then, in the absence of materiality, in the absence of harm to defendant from the error, in the absence of wrong by the plaintiff, except in trusting and relying on defendant's agent, should the plaintiff be compelled to lose what both parties intended to secure to him?

Besides it is worthy of consideration whether a representation of value can be treated as a warranty. If it is fraudulently and corruptly over estimated, such fraud may be the basis of an action; but if it is not fraudulent, and is only the expression of an opinion, it could scarcely be relied upon as a warranty of a fact to constitute a cause of action or defense. *McComber* v. *Granite Ins. Co.*, cited, 2 Clinton's Dig., 1741, § 133. A new trial was granted in this case, 15 N. Y. 495, but this subject was not considered by the court.

Relying, however, upon *Rowley* v. *Empire Ins. Co., ante,* I shall hold that the defendant was liable, notwithstanding the valuation contained in the application upon the facts found by the referee.

By the second proposition relied upon by the defendant to reverse this judgment, it is claimed that plaintiff's action is barred by his misrepresentations, fraud and false swearing as to value of potatoes and damages to piano.

Such valuation, unless corrupt and dishonest, does not invalidate the policy. All that is required is a substantial compliance with the requirements of the company in making proof of loss. This is frequently difficult, and sometimes, by reason of the fire, almost impossible. Certainly, mistakes or errors of judgment ought not and do not invalidate a policy or bar a recovery. If they did there could scarcely ever be a recovery. The wrong must be intentional and willful; it must be with the design to cheat and defraud before rights under the policy are destroyed.

The requirements for proofs of loss, and the proofs under it, are to be construed liberally, and, in the promotion of substantial justice, not technically or unreasonably. *Bumstead* v. *Dividend Mut. Ins. Co.*, 12 N. Y. 81, 93, and cases cited. The referee has found that plaintiff's estimates of loss presented by the proofs were not made with a fraudulent intent nor to secure over pay for his losses; in short, that such estimates were honestly and in good faith made to fulfill the company's requirements.

Such finding is confirmed and strengthened by the evidence. It

must, therefore, be sustained, and the proofs of loss held to be a substantial and fair compliance with the terms of insurance. A further suggestion is made by respondent's counsel that the defendant, by its subsequent acts in adjusting this loss after full knowledge of the facts, has waived the forfeiture which it was entitled to insist upon. The view taken above renders it unnecessary to consider that subject.

In like manner the plaintiff claims that the subsequent recognition of the policy as valid, the cancellation of the same by the defendant, and repayment of unearned premiums to the plaintiff, with a stipulation that the same should not affect plaintiff's claim for loss after defendant had full knowledge of all the alleged excessive valuations, waives such objections, and constitutes an affirmance of the policy and the defendant is thereafter estopped from setting up that said policy is void.

It is unnecessary to consider this proposition, since the conclusions already reached dispose of the whole case.

For the reasons given, the judgment entered on the report of the referee should be affirmed with costs.

PARKER and J. POTTER, JJ., concurred.

*Judgment affirmed.*