ALLAN A. HILL

*v.*

THE MILLVILLE MUTUAL MARINE AND FIRE INSURANCE COMPANY.

A policy of insurance issued in the name of the agent of the owner of the vessel insured, instead of in the name of the principal, through the mistake of the insurance company's agent in preparing the application for the policy, without any representation or mistake of the owner or applicant for such insurance, may be rectified after the loss of the vessel, the act of the company's agent in such case being that of the company and not of the insured, notwithstanding the fact that he signed the application with his own name " for applicant."

Bill to reform policy of insurance.   On final hearing on pleadings and proofs.

*Mr. W. B. Williams,* for complainant.

*Mr. J. H. Nixon,* for defendant.

THE CHANCELLOR.

This suit is brought to reform a policy of marine insurance for $2,000, dated November 8th, 1879, and continuing for one year from that date, issued by the defendant in favor of the firm of P. I. Nevius & Son, upon the brig Euroclydon.   The vessel was

Hill *v.* Millville Insurance Co.

not owned by the firm, but by the complainant, who was a resident of Nova Scotia, and whose agents for the purpose of obtaining the insurance P. I. Nevius & Son were. There had been two previous policies issued by the defendant on the same vessel, each for one year—one in 1877 and the other in 1878. The latter expired on the 8th of November, 1879. The first was issued in favor of P. I. Nevius & Son, but whether it appeared on its face to be for the benefit of the complainant or not the evidence does not clearly disclose. The second also was originally issued in the name of P. I. Nevius & Son, but afterwards was changed to that of the complainant as the result of an inquiry on the part of the defendant of the agent, Daniel D. Baker, through whom the insurance was ordered, as to why the firm had insured in its own name if it was not the owner of the brig. That policy, therefore, was in the name of the complainant when it expired. The application in pursuance of which the third policy, the one in question, was issued, was made by P. I. Nevius & Son to the same agent. The firm applied to him in New York, where his office was, to renew the then-existing policy, which, as before stated, was in favor of the complainant. The written application was made out by the agent on a blank furnished by the defendant to him; such as was furnished by it to all those who obtained business for it. It stated that insurance was "wanted on the brig by P. I. Nevius & Son," and it was signed by Daniel D. Baker, "for applicant," the word "applicant" being printed in the blank. The vessel was lost near Montevideo in July, 1880, during the continuance of the policy. Proofs were made and delivered to the company, through Baker, but the company refused to pay, on the ground that P. I. Nevius & Son were not the owners of the vessel when the policy was issued. As before stated, the second policy, which ran for one year from November 8th, 1878, that is, to November 8th, 1879, was in the name of the complainant. It had been obtained by P. I. Nevius & Son, for him, through Baker, as agent for the defendant. Shortly before the first policy expired, the defendant's secretary wrote to Baker, and mentioning the fact that the policy would soon expire, said the company did not know about renewing it,

and asked whether the vessel was in good order and whether P.
I. Nevius & Son owned her, to which Baker replied by letter of
November 22d, 1878, that Nevius said she belonged to a busi-
ness friend of his, and that in consequence of the business rela-
tions between him and them, P. I. Nevius & Son kept that
insurance on her.   That letter was received by the company.
But notwithstanding the fact that P. I. Nevius & Son said they
did not own the brig, it issued the policy to them and sent it to
Baker, enclosed in or with a letter in which the secretary asked
why P. I. Nevius & Son insured the vessel in their own name
if they did not own her, and added that the company was not
willing to issue the policy except in the name of the owner.   That
policy was canceled, and another, in the name of the complain-
ant, issued instead thereof, as before stated.   It appears, from the
evidence, that before the application for the last policy was made,
the company itself had taken notice of the fact that the then-
existing policy (to the complainant) was about to expire, and the
secretary had written to Baker on the subject.   By letter of
October 22d, 1879 (the policy then in force did not expire until
the 8th of November, and no application for its renewal had been
made), the secretary informed Baker that that policy would ex-
pire on the 8th of November, and that before renewing it the
company must have a full report of the situation of the vessel.
Baker promised, by letter of October 25th, 1879, to attend to
the matter.   The complainant, by letter of November 19th,
1879, directed P. I. Nevius & Son to renew the policy for him.
In compliance with that direction they sent a clerk of theirs, Mr.
McIntosh, to Baker, as agent for the company, to obtain the
renewal.   He took with him the policy which had expired on
the 8th, and gave it to Baker for renewal.   The latter at once
said (undoubtedly referring to the communication he had received
on the subject from the company by the above-mentioned letter
of October 22d) he would have to have the full particulars of the
vessel as to her repairs &c. before he could do anything with it.
Mr. McIntosh immediately wrote to the complainant for the
required information.   Owing to his absence from home, the
complainant did not reply until December 3d.   The information

he then gave was not satisfactory to Baker (he said it was not sufficiently explicit), and Mr. McIntosh again wrote for P. I. Nevius & Son to the complainant for a copy of the vessel's class. The complainant replied, December 15th, that the vessel had been reclassed in Baltimore, and that he had requested a Mr. Hays of that city to send them the needed copy. They obtained it from Hays and gave it to Baker. A short time afterwards he obtained the policy and delivered it to P. I. Nevius & Son, who took it and put it away in their safe, without particular examination, and never discovered that it was not issued to the complainant or was issued to them, until after the proof of loss had been made, and the company refused to pay on the ground that the policy was issued to P. I. Nevius & Son, who did not own the vessel. Nevius & Son made no written application for the policy in question. They merely applied for a renewal of the policy of 1878, which they then handed to the agent. No written application was made at all until the 23d of December, when Baker himself made it, as before stated, on one of the blanks furnished him by the company for such purposes. He had not been requested by P. I. Nevius & Son to renew or insure in their name. They had not told him, or given him to understand, that the complainant was no longer the owner of the vessel, nor that they had become the owners, nor that they had any interest whatever in it; they merely applied for a renewal of the policy of 1878 which had been issued to the complainant, and gave him that policy for his guidance and as part of his instructions. Indeed, the request for a renewal and the delivery of the policy which had expired, constituted the application on their part. It does not appear that they understood that Baker intended to make the written application. They did not request him to do so; but after he had obtained the copy of the class, he, without consultation with them, and without their knowledge, made the application, signing it " Daniel D. Baker, for applicant." He says the insertion of the name P. I. Nevius & Son was, he supposes, a mistake of his; that Mr. McIntosh came to his office and wanted the policy renewed, and as he, Baker, had frequently made out policies for

P. I. Nevius & Son, he made this one out in that way. He says·
he supposes it was a blunder of his, and he adds that he did not
discover it until after the loss. He knew the application was for
a renewal; the word "renewal" is written in the usual place—
a conspicuous one—at the top of the application, and is under-
scored to call attention to it. Moreover, on the same day on
which the application is dated, Baker wrote to the company, en-
closing the application, and speaking of it as an application for
"renewal" of the policy on the Euroclydon. He added:

"You will recollect you informed me that her class had expired, and that
unless she had been reclassed you could not renew it. I so informed Mr.
Nevius. He replied that he would write to the managing owner and find out
about it. He did so, but received no reply until recently, as the managing
owner was absent from home" &c.

The company knew it was an application for a renewal of the
policy which had been issued to the complainant. It is urged
on behalf of the company that by the reference to the managing
owner in Baker's letter, the company was led to believe that P..
I. Nevius & Son were part owners. That reference was not such
a representation. The company, knowing, as it did, that P. I.
Nevius & Son were ship-brokers, and that when the policy to be·
renewed was issued they were merely agents for the complainant
in obtaining insurance on his vessel, was not warranted in as-
suming from that reference that the firm were themselves part
owners. The term "managing owner," it may be observed, is·
one which ship-brokers would be very likely to use in connection
with a request for information as to a vessel, without reference to
whether she was owned by one or more persons. Baker, in his
letter, probably intended to give the substance of the conversation
with Nevius and not his exact words. The conversation was not
in reference to the ownership of the vessel at all, but as to her
condition, and Baker would probably have used the same lan-
guage if Nevius had told him they would apply to the person
who was the sole owner, who, of course, would have been the·
managing owner. It is noteworthy, in this connection, that Mr.
Nevius swears that before the policy of 1878 expired, Baker·

called on him and stated that the company would not renew the policy without having knowledge of the repairs which had been made, and whether the vessel had been reclassed, and he says he thinks he stated to him at that time that he had received no orders to renew the policy. Baker certainly understood that P. I. Nevius &᾽ Son were merely agents for the owner, and not owners or part owners themselves. Baker was the agent of the company and not the agent of the complainant, and the latter is not bound or to be affected by his errors or unauthorized misstatements. The fact that Baker signed the written application "for the applicant" did not make him the agent of the complainant, or render him any the less the agent of the company. It is true, Mr. Howell, the secretary, swears that the officers of the company, before taking the risk, wrote several letters asking if P. I Nevius & Son were owners, and that the replies thereto were that the complainant was managing owner and they part owners, and that the company was insuring the interest of the latter, but he does not speak of his own knowledge, and the statement is entirely unsupported and is clearly erroneous. All the evidence shows that no question was asked or suggested as to the ownership at all. The same witness also says that the application for the second policy was in the name of the complainant. This is a mistake. It was in the name of P. I. Nevius & Son, and was made and signed by Baker. It should be stated that Mr. Mulford, the person who was secretary during all these transactions, is dead. Mr. Howell became secretary in June, 1880.

The defendant denies that Baker was its agent. It alleges that it had no recognized agent in the city of New York, and was, by the laws of the State of New York, prohibited from having any there, because it was a mutual company. The latter fact is of no importance in this suit. If, in fact, Baker was its agent, it is manifestly of no consequence that the law of New York prohibited the defendant from having an agency there. The fact that the defendant violated the law of New York in that respect would not excuse it from liability. Baker might have been its agent to bind it, notwithstanding the prohibition. As it construed the law, it was at liberty to do business in New York by

special agents, and its idea seems to have been that it might lawfully act in its business there through persons in New York as its agents, notwithstanding the law, provided such persons did not publicly, by signs or otherwise, claim to be its agents. That Baker was its agent (and with a very extensive field of action) there is no room to doubt. P. I. Nevius & Son understood that he was its agent, not only from his acts as agent in behalf of, and as representing it, but also from what he said on the subject. Mr. Nevius says he thinks Baker told him he was agent for the company. Baker testifies that he did business in respect to insurance by the company from about the year 1873 to 1879. The secretary says that Baker did business with them from 1874 to about the first part of 1880, when the company got into difficulty, and, as he expresses it, closed up writing on any of Baker's business for a period of about six months—from June 1st, 1880, to the first part of 1881. He also says that Baker is doing business for the company still, but that appears from Baker's testimony to be a mistake. He says he has not done any business for the company since it got into trouble. Baker, when asked to state the different kinds of business which he transacted for the company, at its request, during the period he named as above mentioned, from 1873 to 1879, said they were hull risks, freights and cargoes; that when there was a wreck, or a vessel was injured in any way, he attended to the business for the company and arranged the business of the loss &c.; that he made certain kinds of risks binding on the company; that he sometimes received directions from it to insert certain clauses in the policies; he initiated risks on open policies, whether of insurance to individuals or re-insurance to companies; as agent for the company, he received and receipted for premiums and accounted for them by monthly accounts to it; he sometimes examined vessels for it as to their condition and class, and it consulted with him generally in reference to all matters, such as averages, collections &c. to be done, learned or attended to in the city of New York touching its marine insurance, not only so far as those were concerned which it had taken through his instrumentality, but occasionally also as to others. He made some adjustments,

settling some losses and claims for the company.   By an under-standing between them he gave what are called " dummy notes " for some insurances obtained through him; that is, he gave, in-stead of the premium notes of the assured, notes signed by him for them, for which genuine notes were to be subsequently sub-stituted.   He represented himself to be the company's agent. He so signed the special clauses inserted by him in policies. He receipted for premiums as its agent.   He initiated risks for it in that way.   In two instances he endorsed and collected the money upon bank checks for premiums given to him by P. I. Nevius & Son, and made payable to him as agent of the com-pany.   His monthly accounts current with the company were on printed blanks furnished by it to him for the purpose.   They were headed, " Dan'l D. Baker, agent at New York, in account with Millville Mutual Marine-and Fire Insurance Company, for the month ending " &c.   The blanks contained the following printed memorandum or notice :

" This statement to be forwarded on the last business day of each month, and in all cases accompanied with canceled policies, vouchers for charges and re-mittances in full of balance due."

In 1877, he addressed a letter to Messrs. Bentley, Gilder-sleeve & Co., informing them that the schooner Early Bird was in the port of New York, and appeared to be neglected by the assured, and that the company would not hold itself liable for any damage or expense accruing to her or her freight in consequence of such neglect &c.   This letter he signed " Mill-ville Mutual M. & F. Ins. Co., by Dan'l D. Baker, agt.," and he appears to have sent a copy of the letter to the company at once. As before stated, he had authority to initial open policies, whether for insurance or re-insurance.   He had initialed such a policy for insurance for P. I. Nevius & Son.   Mr. Nevius says they took out such a policy from the company, and Baker rep-resented himself as its agent, and gave them a book in which the risks were to be entered.

In reference to such policies, the secretary says an open policy is a policy made by the company and attached to the front part

of what is called an open policy-book, in which a given amount
of insurance, that is, insurance up to a certain amount, is allowed
the parties holding the book.    All that is necessary to make that
policy binding on any particular vessel is to enter on that policy-
book, at the time the risk commences, the name of the vessel,
with the valuation and voyage, and the amount of insurance the
insured wants the company to cover, and he says that is binding
on the company, according to the agreement; that a correspond-
ent authorized to do so, would, not only with a view to his own
commissions, but also to the protection of the company, examine
the book from day to day to see what amount the assured were
putting upon it, and would initial the entries already made.    By
initialing is meant signing the initials of the agent's name, with
the addition " agent " or " agt.," denoting his representative
character.    It is quite clear that P. I. Nevius & Son had reason
to regard Baker as the agent of the company.    But still further,
Baker swears that there was a verbal understanding between him
and the company that he was to act as its agent so long as it was
prohibited from having an agency in the state of New York.
He further says that he had seven or eight books for open policies,
before the policy in question was issued.    He was the agent of
the company not only to receive applications for insurance and
premiums, but for many other important purposes, and was, in
fact, its general agent in the city of New York.    Being the com-
pany's agent, his mistake in the application in question was the
mistake of the company as much as it would have been if the
application had been made in the company's office and taken
down by its secretary, and the blunder had been made by
the latter.    The complainant, by his agents, applied to the
company to renew his policy, and the company, by its own mis-
take alone, issued the new policy in the name of his agents.    It
did not renew, but issued a new policy.    In *2 Am. Lead. Cas.*
*(5th ed.) 919, note,* it is said that whatever the rule may be, under
ordinary circumstances, it would seem clear that when the duty
of preparing the policy is, as generally happens, assumed by the
assurers, they cannot take advantage of the failure of the instru-
ment to express any fact or circumstance that has been duly

communicated by the insured and omitted, through negligence or design, by their officers or agents, and that the principle is the same where the error or misdescription occurs in an application or survey, which, though nominally proceeding from the insured, is in fact prepared or dictated by an agent of the company. The cases cited as authority fully sustain the authors in this conclusion. Among them are, notably, *Plumb* v. *Cataraugus Ins. Co.*, *18 N. Y. 392; Rowley* v. *Empire Ins. Co., 36 N. Y. 550; Howard Ins. Co.* v. *Bruner, 23 Pa. St. 50; Ayres* v. *Hartford Ins. Co., 17 Iowa 176,* and *Malleable Iron Works* v. *Phœnix Ins. Co., 25 Conn. 465,* to which may be added *Woodbury Association* v. *Charter Oak Ins. Co., 31 Conn. 517; Columbia Ins. Co.* v. *Cooper, 50 Pa. St. 331,* and *Parsons* v. *Bignold, 13 Sim. 518.* See, also, *May on Ins.* §§ *131, 144.*

In the case in hand there was no fraud. P. I. Nevius & Son did not intend to take out the policy in their own name, but in the name of the complainant, and they supposed they had done so. They neither represented that they were owners nor asked for a policy in their name. That the policy was issued in their name and not in that of the complainant was due to mistake, not theirs, but the company's—a mistake of which they knew nothing until after the loss had occurred and the proofs had been made. Nor, it may be observed, was there anything in the policy, had they read it, to put them upon any inquiry as to the contents of the application. It makes no reference to the application. The fact that they did not examine it and discover the mistake, cannot affect the complainant's right to relief in this suit. Manifestly, justice requires that the company shall not be permitted to take advantage of its own mistake. The application to renew did not warrant it in issuing the policy to P. I. Nevius & Son. In *Oliver* v. *Mut. Marine Ins. Co., 2 Curt. C. C. 277,* McKay, an insurance broker, applied for insurance on two ships and their freight, the policy, according to his written direction on the subject, to be for him, and to be made out on account of A. McLimont, and payable to the latter or his order. The policy was made out accordingly. There was a loss. McLimont was himself only an insurance agent, to whom the

.complainant's agent had, through still another person, applied to get the insurance. The suit was brought to reform the policy by inserting after McLimont's name the word "agent" or the words "for whom it may concern." The rectification was decreed. The court says that when a complete contract for a policy is made by a known agent, and nothing is said respecting any declaration of interest, the contract is to insure the property of the principal, and in order that this contract may take effect, power is impliedly reserved to the agent specially to declare the interest upon which the insurance is to attach, and to have such declaration inserted in the policy when drawn, or to have the policy drawn so as to assure him, as agent, leaving the declaration of interest to be made. In that case the company supposed McLimont was the owner. It was led to believe so by the direction given by McKay to insure on account of McLimont. The company knew McKay was merely an agent, and the erroneous direction arose either from mistake or fraud. The court held it was the former, and ordered that the policy be corrected. See, also, *Phœnix Ins. Co.* v. *Hoffheimer, 46 Miss. 645.* But in the case under consideration there was no misrepresentation nor any mistake on the part of the complainant or his agents. The mistake was the consequence of a blunder on the part of the company's agent. There will be a decree for the reformation of the policy by the substitution of the complainant's name as assured, instead of that of P. I. Nevius & Son.