### KOENIG v. UNITED LIFE INS. ASS'N.

(Supreme Court, Trial Term, New York County. April 13, 1896.)

LIFE INSURANCE—PRIOR REJECTION OF INSURED—WAIVER BY COMPANY.

In an action on a policy of life insurance, where the defense was breach of the warranty that the insured had never been rejected by any other company, it was shown that the agent who took the application and defendant's medical examiner, who was also medical examiner for another company, had told defendant's vice president that the insured had an application pending in such other company, that he was a good risk, and that they would transfer the risk to defendant; that, in order to do this, the medical examiner rejected insured for the other company, and accepted him for defendant. *Held* that, the defendant's officers having issued the policy with full knowledge of the facts, it was estopped from setting up the rejection as a breach of the conditions of the policy.

Action by Adelbert Vincent Koenig against the United Life Insurance Association to recover on a policy of life insurance.    Judgment for plaintiff.    Motion for new trial denied.

Friend & House (Thos. Darlington and L. J. Vorhaus, of counsel), for plaintiff.

Harry Wilber, for defendant.

McADAM, J.    The jury find on all the facts for the plaintiff, and the defendant moves for a new trial on the minutes.    The insured, in his application, falsely stated that no proposal to .insure his life had ever been postponed or declined, or had ever been made upon which a policy had not been received by him.    The question is whether this statement, having been incorporated into the policy, and thus made a warranty, vitiates the contract.    That such result would ordinarily follow there is no doubt.    To avoid this, the plaintiff called Harvey W. Hatch, who testified that, at the time the application was made and the policy issued, he was vice president of the defendant; that the application was brought to him by one Michelis, an insurance solicitor, who told him that the applicant had applied to the National Mutual for insurance; that he had been likewise so informed by Dr. Boyle, the defendant's and the National Mutual Company's examining physician; that Dr. Boyle also told him he had examined the applicant for that company, that he was a good risk, and they would take it from that company, and give it to the defendant.    It is claimed that, in order to transfer the risk, Dr. Boyle had to reject the applicant in the National Mutual Company, and approve his application to the defendant, and that is just what the doctor did.    When urged to answer whether Dr. Boyle had not told the witness about the rejection in the National Mutual Company and its purpose, Mr. Hatch first answered, "No," and finally said that he had told all that he remembered.    The application to and rejection by the National Mutual Company furnish the chief ground upon which the defendant relies to establish the breach complained of.    The jury found that the defendant knew of such application and rejection, and took the risk notwithstanding its knowledge of the facts.    The conduct of Dr. Boyle in rejecting the applicant as to the National Company on April 16, 1892, and recommending him to the defendant 18 days afterwards, is reconcilable only with the theory that his purpose was to take the risk, which he considered safe, from the company, and place it with the association; and this fact was undoubtedly made known to Mr. Hatch, the vice president of the defendant, and through him to the association. This is not a case of knowledge acquired by a solicitor or special agent of limited powers, but knowledge brought home to the corporation itself, through one of its high officials, while in the discharge of its corporate functions.    Ang. & A. Corp. § 305; Wade, Notice, §§ 672, 675; Bank v. Davis, 2 Hill, 451.

Notice of the fact that the insured had applied to the National Company put the defendant upon inquiry, and, when Dr. Boyle told Mr. Hatch of such former application, the next inquiry in order

would naturally be as to what had become of it; and the doctor, who knew all about it, doubtless told Mr. Hatch just what had been done.     The applications to both insurers were filled up by Michelis, and they were identical.     It is evident that the application in question was to take the place of the one to the National Company, treating the latter as formal merely.     The applicant apparently so regarded it, for it does not appear that he had any notice that his application had been rejected, or that he was to get any policy other than the one he received.     Dr. Boyle filled up the "Answers by Medical Examiner" in both applications.     He handled both, knew what each contained, and in the application to the National Company he certified that the applicant had asthma, and did not advise the issuing of a policy; while in the application to the defendant he said nothing about asthma, but advised the taking of the risk, and said it was a good one for the age.     The doctor was not selected by the applicant to make the examination.     He was the regular medical examiner of the defendant, and its agent.     Grattan v. Insurance Co., 80 N. Y. 281.

Can the defendant, under such circumstances, enforce a forfeiture of the policy?     "The decided weight of authority is now in favor of the view that where an agent, having authority to take or procure applications, fills out the blanks, but does so incorrectly or incompletely, the company, and not the assured, must be the sufferer, either because in so doing the agent is held to be the agent of the company, and the company is presumed to do all that he does, and know all that he does, or because the company is estopped from availing itself of the act or neglect of its agent."     Bliss, Ins., at page 450.     However this rule may be questioned where the agency is limited and notice thereof brought home to the assured, it cannot be doubted where the information, as in this case, was imparted to the vice president of the defendant in the transaction of the corporate business.

Mr. Richards, in his work on Insurance (section 68), in assigning reasons for waiver and estoppel in certain cases, says:

"The policy is prepared in the interest of insurers.     The applicant must take it or nothing. * * * It would not be consonant with fair dealing to permit an insurer, in return for the premium, to deliver a pretended contract of insurance, while knowing all the time, from the very threshold of the transaction, that a forfeiture is already incurred by reason of a violation of some printed condition, and that, therefore, the policy is of no more avail to the insured than a piece of waste paper."

If, therefore, at the time of closing the contract, the insurers have knowledge of the existence of a cause of forfeiture which would invalidate the policy from the time of its inception, they are held, by accepting a premium or delivering the policy, or by any other positive act amounting to an acknowledgment of its validity, to waive the forfeiture.     Van Schoick v. Insurance Co., 68 N. Y. 434. Knowledge by or notice to the company of any inaccuracy or misstatement in the application upon which a policy is issued after such notice or knowledge binds the company, and prevents it from availing itself of the inaccuracy in defense; some of the cases regarding

the facts as amounting to a waiver, and others as working an estoppel in pais.   May, Ins. §§ 143, 263; Herm. Estop. § 549; Bigelow, Estop. 526; Rowley v. Insurance Co., 36 N. Y. 550; Bennett v. Insurance Co., 106 N. Y. 243, 12 N. E. 609; O'Brien v. Society, 117 N. Y. 310, 22 N. E. 954.   The utmost good faith is the basis of insurance contracts.   But the obligation does not rest solely on the assured; it is reciprocal.   Forfeitures are not favored, and parties will be, in many instances, estopped from raising questions with that end in view when good faith and fair dealing require application of the equitable doctrine.   When the policy is issued with full knowledge on the part of the underwriter of facts in direct conflict with the statement on the same subject in the application, it is reasonable to assume that there was no intention to insist upon the condition or claim a forfeiture under it.   McNally v. Insurance Co., 137 N. Y., at page 396, 33 N. E. 475; Carpenter v. Insurance Co., 135 N. Y. 298, 31 N. E. 1015.   Conditions which enter into the validity of a contract of insurance at its inception may be waived, and are waived if so intended, although they remain in the policy when delivered.   Berry v. Insurance Co., 132 N. Y., at page 58, 30 N. E. 254.   Indeed, "when the facts are all known before any contract is made, a condition against a state of things known by all parties to exist cannot be deemed within their intention or purpose."   Forward v. Insurance Co., 142 N. Y. 383, 37 N. E. 615.   To sustain a defense under such circumstances would be to hold that there was a breach eo instanti of the making of the contract, known to be so by the company; and to allow it "to take the premium without taking the risk would be to encourage a fraud."   Bidwell v. Insurance Co., 24 N. Y. 302, 304. Such a result would not be tolerated.   In Thebaud v. Insurance Co., 84 Hun, at page 8, 31 N. Y. Supp. 1084, the court said:

"In each of the cases of Van Schoick v. Insurance Co., 68 N. Y. 434, Woodruff v. Insurance Co., 83 N. Y. 133, and Short v. Insurance Co., 90 N. Y. 18, oral evidence was received showing a situation in contravention of an express warranty contained in the policy, and that the insurer had knowledge of such situation when the policy was issued.   Evidence of this character was received, not for the purpose of contradicting the written agreement, but to demonstrate that the insurer had knowledge of the facts at the time the policy was issued, which it relied upon on the trial as constituting a breach of warranty.   Upon such proof was predicated an estoppel, the object of the rule being to prevent fraud, and to render it impracticable for insurers to attempt acquisition of premiums upon policies understood by them to be invalid when issued."

In other words, it is competent to prove by parol the actual transaction in reply to defendant's claim of breach of warranty and fraud, and this without reforming the contract or asking for equitable relief.   Grattan v. Insurance Co., 80 N. Y. 281.   The idea of taking the application from the National Company to the defendant originated with the defendant's agents.   The transfer was made in its interest, and the fact that the assured assented should not, under the circumstances, be made the groundwork of a charge of fraud and falsehood.

The motion for a new trial must therefore be denied.